587 So.2d 1378 (1991)
HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS, Appellant,
v.
STATE of Florida DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS, Appellant/Cross-Appellee,
v.
TSI SOUTHEAST, INC., and State of Florida Department of Environmental Regulation, Appellees/Cross-Appellant.
Nos. 90-1718, 90-2767.
District Court of Appeal of Florida, First District.
October 10, 1991.
*1380 David D. Eastman and Patrick J. Phelan, Jr., of Parker, Skelding, Labasky & Corry, Tallahassee, for appellant/cross-appellee.
William H. Congdon, Asst. Gen. Counsel, Tallahassee, for appellee State of Fla. Dept. of Environmental Regulation.
Ross McVoy and Vivian F. Garfein of Fine, Jacobson, Schwartz, Nash, Block & England, Tallahassee, for appellee/cross-appellant TSI Southeast, Inc.
ZEHMER, Judge.
By these consolidated appeals and cross-appeal, we review final orders of the Department of Environmental Regulation (the Department or DER) relating to the applications of TSI Southeast, Inc. (TSI) for permits to construct a biohazardous medical waste incinerator facility in Jasper, Florida. In case number 90-1718, the Hamilton County Board of County Commissioners (Hamilton County) appeals a May 10, 1990, final order dismissing its petition for formal administrative hearing pursuant to section 120.57(1), Florida Statutes (1989). In case number 90-2767, Hamilton County appeals and TSI cross-appeals a September 7, 1990, final order approving the issuance of permits numbered AC24-171377 and AC24-171378 to TSI to construct the incinerator facility to burn biohazardous waste and to operate a biohazardous waste storage area, subject to certain conditions. The issues raised in case number 90-1718 are also raised in case number 90-2767; therefore, both cases will be discussed together.
Hamilton County raises four points on appeal: (1) the Department erred in requiring TSI's facility to obtain only air permits *1381 for the incinerator and not requiring TSI to obtain a separate "solid waste permit" for the storage areas; (2) no reasonable assurances were provided that the incinerator facility will comply with Florida standards for air emissions; (3) the Department erred by denying Hamilton County's petition for a formal administrative hearing in case number 90-1718; and (4) the Department erred by striking Hamilton County's exceptions to the recommended order. On cross-appeal, TSI argues that the Department erred in finding that Hamilton County had the requisite standing to maintain this action.
In adjudicating these issues, we are necessarily mindful that the laws regulating air and water pollution set forth in chapter 403 of Florida Statutes are not intended to provide a means for the outright prevention of the construction and operation of legitimate business facilities and functions. Chapter 403 and DER's delegated powers thereunder are designed only to regulate the construction and operation of such business enterprises in a manner to prevent air and water pollution by the business facility in excess of the specified limits. Judging DER's orders in this case against these underlying principles and the specific provisions by statute and rule hereinafter discussed, we affirm on all issues presented on appeal and cross-appeal.

I.
On October 16, 1989, TSI, through its president Kenneth Krantz, filed an application with the DER requesting a special permit to construct two biohazardous waste incinerators to burn medical waste. The proposed facility would be located in Jasper Industrial Park within the city limits of Jasper, Florida, in Hamilton County. Among other things, the application states:
This project is for the construction of a biohazardous waste incinerator, manufactured by Basic Environmental Engineering, Inc., Model 3500, with a secondary chamber and burner having a minimum of a 1 second retention time at 1800° F minimum. Lime injection and a baghouse will be utilized to control particulate and HCL emissions. This project should result in full compliance with all existing and proposed regulations.
The application contains no mention of TSI's intent to obtain any permit for the storage of biohazardous medical waste on the incinerator facility site. On November 30, 1989, the Department issued a notice of intent to issue general permits numbered AC24-171377 and AC24-171378 for the proposed project, stating in part that (1) it will issue the permit unless a petition for formal administrative hearing is filed and the hearing held, and that (2) TSI was required to give public notice by publication of the notice of intent. The Department also prepared draft permits for the facility, listing among the specific conditions, conditions 13 and 14 which "apply to storage of biohazardous waste and disposal of the ash from incineration of biohazardous waste." Condition 13 states that:
At least 30 days prior to the operation of the facility, the Permittee shall submit to the Department written operation and contingency plans pursuant to Rule 17-712.450, and notification, using Departmental Form 17-712.900(2), of its intent to utilize the General Permit contained in Rule 17-712.800. The provisions of Rule 17-712, F.A.C., are hereby incorporated by reference in this permit .. .
The notice of intent was published in The Jasper News on November 23, 1989. On or about December 5 or 6, 1989, Hamilton County filed a petition and later an amended petition for a formal administrative hearing, alleging that its substantial interests are affected by the action proposed in the notice of intent. The City of Jasper filed a petition to intervene, stating that it will be substantially and adversely affected by the issuance of the permit, and the hearing officer granted its petition to intervene.
On or about February 26, 1990, TSI submitted a biohazardous waste storage general *1382 permit notification to DER. Among other things, the notification indicated that biohazardous waste would be trucked directly from the facilities where the waste would be generated, and that the waste would be stored in several identified storage areas. The notification also described how the stored waste would be handled prior to incineration. The Department did not require TSI to publish notice of the waste storage general permit notification, and TSI did not do so. The hearing officer issued an order stating that a public hearing on the application for special permit for the incinerator facility was scheduled to begin on March 1, 1990. On the first day of the hearing, out of concern that condition 13 suggested that a general permit was already granted for the storage areas, the Department introduced an amended draft permit with several changes to condition 13 requiring that the facility apply for a general storage permit and meet the waste storage requirements of rule 17-712.420, Florida Administrative Code. Other amendments related to the disposal of the ash generated from the incinerator facility and to an increase in the stack height of the facility's disposal stack. Hamilton County objected to testimony and other evidence regarding the changes, arguing that it had received the information regarding the changes the evening prior to the hearing, and that the information was not disclosed during discovery. After on- and off-the-record discussions, the parties eventually agreed to proceed with the hearing based on the changes DER made to the draft permit. The remainder of the proceedings took place between March 3, 1990, and April 2, 1990.
On March 28, 1990, Hamilton County filed a petition for a formal administrative hearing pursuant to sections 120.57(1) and 403.412, Florida Statutes (1989), alleging that it is substantially affected by the Department's proposed issuance of a biohazardous waste storage general permit to TSI. The petition lists as one reason for the requested hearing the Department's attempt to bifurcate the existing administrative proceedings concerning the incinerator facility and to deprive the County of a point of entry to litigate the waste storage issues. On May 9, 1990, the Department issued an order dismissing the petition, stating that:
The Department has no legal authority to grant Petitioner an administrative hearing in that the Department has taken no agency action regarding TSI Southeast's entitlement to use the Biohazardous Waste Storage General Permit. Without such agency action, there is no right available to an objecting party to use Chapter 120, Florida Statutes, to initiate administrative proceedings to challenge someone's use of the general permit, at least absent the Department's publishing or requiring by rule the applicant to publish notice of application for a general permit pursuant to provisions of Section 403.814(2), Florida Statutes, which was not done in this case. See Faller v. Florida Department of Environmental Regulation, 10 F.A.L.R. 1351 (Final Order dated February 8, 1988); City of Valparaiso v. State of Florida Department of Environmental Regulation and David Weaver, 7 F.A.L.R. 4834 (Final Order dated July 3, 1985). TSI Southeast is entitled to the use of the above described General Permit in accordance with Section 403.814, Florida Statutes and Rule 17-712.800, F.A.C.
This order is the subject of the appeal in case number 90-1718.
On July 25, 1990, the hearing officer issued an order recommending that "DER enter a final order approving TSI's applications for permits for the subject two biological waste incineration facilities in accordance with the conditions specified in the notice of intent to grant the permit and enumerated in this Recommended Order." The hearing officer's specific findings are reproduced at 12 F.A.L.R. 3783 (Fla.Dept. of Environ.Reg. 1990). On August 10, 1990, Hamilton County filed exceptions to the recommended order with the Department's Office of General Counsel, and TSI *1383 filed a motion to strike the exceptions as untimely. Hamilton County filed a response stating that the exceptions were mistakenly filed with the Department of Administrative Hearings on August 9, 1990, through inadvertence of its messenger, and that the next morning they were hand-delivered to and immediately filed with the Department.
On September 7, 1990, the Department entered a final order adopting most of the hearing officer's findings of facts and conclusions of law, and stating that:
2. The Department is to issue Permit Nos. AC24-171377 and AC24-171378, as introduced at the hearing, with the following addition [sic] conditions:
a. The stack height of the disposal stack shall be 98 feet in order to meet the ambient air limits for HCL.[1]
b. None of the ash generated from the facility will be disposed of in a landfill owned or operated by Hamilton County.
c. Mr. Basic, the vendor and manufacturer of the incineration equipment, shall perform as overseer for the construction, installation and testing of the proposed facility.
The final order is reproduced at 12 F.A.L.R. 3774 (Fla.Dept. of Environ. Reg. 1990). This order is the subject of the appeal and cross-appeal in case number 90-2767.

II.
We first address TSI's argument on cross-appeal that the Secretary of the Department erred in finding that Hamilton County had the requisite standing to maintain this action. TSI argues that Hamilton County failed to demonstrate that any of its proprietary interests will be substantially affected by the proposed project. TSI argues that the only witness who testified on the County's standing expressed only "concerns" about the effect of HCL emissions on the County's equipment, bridge, school and other buildings located near the proposed facility. TSI also argues that the only grounds for standing to maintain this action that the County may have had ceased to exist by reason of (1) the County's passage of Ordinance number 74-89 on December 19, 1989, which precluded ash generated from the proposed incinerator facility from being taken to the present or proposed county landfill, and (2) TSI's agreement to raise the stack height for the facility that substantially reduces the anticipated ground concentrations of HCL. It is obvious from the evidence regarding the possible impact of emission from the facility on County property that the County has standing to maintain this action. However, we find that at this point of the proceeding, since the issues were fully litigated in the proceedings below, the standing issue is moot. TSI acknowledged the mootness of the standing issue at oral argument.
TSI's argument in case number 90-1718 that the Department erred in dismissing Hamilton County's petition for a formal administrative hearing on the general permit for storage of biohazardous waste at the proposed facility is also moot because during the proceedings in case number 90-2767, the parties fully litigated not only the issues relating to the air permit for the incinerator but also the waste storage issues sought to be litigated in case number 90-1718. The record indicates that the County filed its petition for formal administrative hearing in case number 90-1718 after the hearing had commenced in case number 90-2767 in which the County fully participated, and after the County had already agreed to litigate the storage issues in that case and was in the process of litigating those issues. At the beginning of the hearing in case number 90-2767, the Department presented the revised draft permit addressing storage areas and, after discussions, the County agreed to proceed on the revised draft permit including the storage areas. Also, prior to that hearing, *1384 the parties' attorneys had signed a prehearing stipulation setting forth the issues to be litigated, including: (1) whether DER has permitting jurisdiction over the proposed project; (2) whether storage and handling of biohazardous waste comply with the requirements of rule 17-712.420; and (3) whether TSI is precluded from availing itself of a separate biohazardous waste storage general permit notification. Additionally, both the recommended order and the final order in case number 90-2767 indicate that the storage issues were fully litigated. Having had an the opportunity to fully litigate the waste storage issues in case number 90-2767, Hamilton County was not entitled to another opportunity to relitigate those issues in case number 90-1718. See Wheeler v. Department of Highway Safety and Motor Vehicles, 297 So.2d 128 (Fla. 2d DCA 1974) (driver's complaint that absence of a hearing prior to revocation of his driver's license resulted in a denial of due process was moot where, after the license revocation, a hearing was held in which the driver's arguments were properly rejected).
We also note the Department correctly ruled that a project authorized by general permit may be accomplished without agency action and without a point of entry for a third party to initiate an administrative contest, unless the Department publishes or requires by rule that the applicant publish notice for a general permit. For this additional reason, the Department did not err in denying the County's petition for formal administrative hearing on the general permit notification for the storage areas. § 403.814, Fla. Stat. (1989). In City of Bradenton v. State of Florida, Department of Environmental Regulation, 582 So.2d 166 (Fla. 2d DCA 1991), the court affirmed a final order dismissing the City's petition for formal administrative hearing regarding issuance of a general permit to construct a boat ramp where the applicant withdrew its application for special permit after being informed by the Department that the project appeared to be qualified to use a general permit; a project authorized by a general permit may be accomplished without agency action and without affording a point of entry for a third party to initiate an administrative contest. In this case, at the point that the County filed its petition for a formal administrative hearing in case number 90-1718, the Department had taken no agency action regarding TSI's entitlement to use the biohazardous waste storage general permit authorized by rule 17-712.800 and section 403.814 and had neither published notice of the general permit nor required TSI to publish such notice.

III.
In support of its contention that the Department erred in requiring the facility to obtain only an air emissions permit for the facility,[2] Hamilton County argues that in addition to an air emissions permit for the incinerator, the facility was required to obtain a "solid waste permit," based on its interpretation of the permit requirements for such facilities existing prior to the 1988 legislation on biohazardous waste management.[3] The County argues that nothing in Chapter 17-2, Florida Administrative Code, which governs air emissions permits for these types of facilities, relieves the owner or operator of this type of facility from complying with previous legislation requiring such facilities to obtain "solid waste permits." Responding, the Department and TSI argue that the Department properly required the facility to obtain only air emissions permits for the incinerator, because the applicable rules require only that *1385 these types of facilities be operated or maintained with "an appropriate and currently valid permit," which in this case is an air emissions permit. The applicable rules contain no mention of a "solid waste management permit," which indicates the Department's intent, under the maxim "expressio unius est exclusio alterius," to exclude requiring such a permit.
After reviewing the panoply of applicable statutes and rules, we conclude that the Department did not err in requiring TSI to obtain only an air emissions permit for the incinerator facility. Section 403.707(1), Florida Statutes (1989), entitled "Permits," provides in part:
No solid waste management facility[4] may be operated, maintained, constructed, expanded, modified, or closed without an appropriate and currently valid permit issued by the department.
(Emphasis added). Rule 17-701.030(1), which implements section 403.707, provides in pertinent part:
Permit requirements. No solid waste management facility or site shall be operated, maintained, constructed, expanded, modified, or closed without an appropriate and currently valid permit issued by the Department.
(Emphasis added). Section 403.704(31), Florida Statutes (1989), also requires the Department to,
[n]ot later than February 1, 1989, initiate rulemaking to address the management of biohazardous waste and biological waste within this state. Such rules shall address onsite and offsite incineration and shall regulate biohazardous waste from the point at which such waste is transported from a facility which generates such waste, for the purpose of off-site shipment for storage, treatment, or disposal, and shall include provisions for the registering of transporters of biohazardous waste.
The Department adopted a number of rules now published in the Florida Administrative Code, including rules 17-712.100, 17-712.420, and 17-17.712.800, to implement that section. Rule 17-712.100 provides:
The purpose of this rule is to implement the provisions of section 403.704(31) and 381.80, F.S., which direct the Department to regulate biohazardous waste and biological waste from the point at which such waste is transported from a facility which generates such waste for the purpose of off-site shipment for storage, treatment, or disposal, including provisions for registration of transporters of biohazardous waste. The Department of Health and Rehabilitative Services will regulate the packaging, storage, and treatment of biohazardous waste at the generating facilities.
Rule 17-712.420, entitled "Off-site Biohazardous Waste Storage," provides:
No person shall operate a facility for off-site biohazardous waste storage without a general permit granted pursuant to Rule 17-712.800, F.A.C. Storage areas that are an integral part of a treatment facility must meet the requirements of this rule; however, a storage facility permit in addition to a treatment facility permit is not required.

(Emphasis added). Rule 17-712.800(1), entitled "General Permits," provides:

*1386 Biohazardous waste storage facilities, unless they are storage areas that are an integral part of the treatment facility, shall operate pursuant to a general permit, and shall meet the applicable general permit requirements in Rules 17-4.510 through 17-4.540, F.A.C., and the requirements of this rule.
(Emphasis added).
With respect to facilities like TSI's proposed incinerator facility, where it is undisputed that the storage areas will be an integral part of the treatment facility, we construe the provisions of the cited statutes and rules to require only one permit, the air pollution permit, and that such permit is sufficient to authorize construction of both the treatment facility and the storage areas that are to be an integral part thereof. Contrary to the County's arguments, no language of any of the rules or statutes refers to a "solid waste permit" or a "solid waste management permit." The County cites to no other applicable rule that requires the proposed facility to obtain such a permit. The pre-1988 laws to which the County refers relating to waste management (sections 403.701-403.864, Florida Statutes) were substantially revised in 1988 so as to impose new standards and permitting requirements specifically for solid waste management facilities, substantially amending previously existing statutes. See Ch. 88-130, Laws of Fla.Chapter 88-130 gave DER authority to enact new rules on this subject, including the cited rules relating specifically to biohazardous and biological waste management. The more recent 1988 laws and rules relating specifically to biohazardous waste management control over the pre-1988 laws relating generally to solid waste management. See Peterson v. State, Department of Environmental Regulation, 350 So.2d 544, 545 (Fla. 1st DCA 1977) (inconsistencies between statutes must be resolved in favor of the last expression of legislative will); Adams v. Culver, 111 So.2d 665, 667 (Fla. 1959) (a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms).
The key provisions negating any requirement for a separate or general permit for the storage areas of the proposed incinerator facility in question are found in rules 17-712.420 and 17-712.800. Both rules state that, while storage areas for these facilities generally must operate with a general permit granted pursuant to rule 17-712.800, where the storage area is an integral part of the treatment facility, a permit for the storage area in addition to the treatment facility permit is not required. The Department did not err in requiring TSI to obtain permits for the proposed treatment facility alone and in refusing to require TSI to obtain a separate general permit for the storage areas that are an integral part of the incinerator facility.

IV.
Hamilton County next contends that the Department erred in approving construction permits for the facility because TSI failed to provide reasonable assurances that the facility will comply with Florida air emissions standards. In particular, Hamilton County argues that TSI failed to provide the Department with engineering reports and design details on the proposed facility as required by rule 17-4.210. The County also argues that while there is no doubt that if the proper type of system is selected, installed, and operated, TSI's proposed facility could meet Florida's standards for air emissions, at the hearing TSI failed to provide reasonable assurances in certain respects, including the kind of air pollution control device that would be, and must be, installed in order for the facility to achieve compliance with Florida air emissions standards, and the type of cleaning system that would be utilized at the facility. The County also argues that TSI failed to present sufficient evidence of the proposed system's design details or descriptions of other installations, if they exist, in which the proposed system has been found *1387 to meet acceptable levels of Florida air emissions, arguing that TSI improperly relied only on "personal guarantees" and "speculations" of the manufacturer of the proposed system who at the time of the hearing had not been formally contracted to oversee the system.
Upon reviewing the record, we find competent, substantial evidence to support the Department's conclusion that TSI provided reasonable assurances in the permit applications and at the hearing to demonstrate that the facility will comply with the applicable Florida air emissions standards. We cannot approve the County's argument that rule 17-4.210 governs the type of application that TSI was required to make for the proposed facility and that TSI's application failed to comply with the requirements of that rule. Rule 17-2.210, which is included in Chapter 17-2 of the Florida Administrative Code governing "Air Pollution," requires that construction permits for incinerator facilities be issued in accordance with the applicable provisions of Part V of Chapter 17-2 and Chapter 17-4. Chapter 17-4 is divided into a number of parts, including Part II generally addressing "Specific Permits; Requirements," and Part III, generally addressing "Procedures for General Permits." However, included in Part V of the "Air Pollution" chapter, Chapter 17-2, is a rule specifically addressing the minimum permit application requirements for construction or operation permits for air pollution sources such as TSI's proposed incinerator facility. Rule 17-2.510(8) states that the minimum "Permit Application Information Required" for "Construction/Operating" are:
1. A description of the nature, location, design capacity and typical operating schedule of the facility or modification, including specifications and drawings showing its design and plan layout;
2. A detailed schedule for construction of the facility or modification.
3. A detailed description of the system of continuous emissions reductions proposed by the facility as LAER, emissions estimates, and any other information as necessary to determine that LAER would be applied to the facility or modification;
4. Information relating to the air quality impact of the facility or modification, including meteorological and topographical data necessary to estimate such impact.
These provisions govern the application in this case, and TSI's construction application generally meets these requirements. The application states the location of the proposed facility and describes the nature and extent of the project, the pollution control system, the cost of the pollution control system, the construction schedule, the proposed operation schedule, the impact of the facility on air quality, and the proposed disposal of any effluent from the facility. The application was signed by a professional engineer. Attached to the application are documents describing the types and amounts of particulate emissions, a location map, a preliminary site plan, a letter from the manufacturer and designing engineer of the proposed incinerator, and a couple of brochures discussing how the proposed incinerator operates, with comparisons of the proposed incinerator with other incinerators. The letter discusses the proposed pollution control system, and the air quality impact of the proposed facility. Maps prepared by the engineer of the proposed incinerator diagraming the proposed facility were also filed with the Department on the date on which the application was filed.
Any additional information necessary to provide reasonable assurance that the proposed facility would comply with the applicable air emission standards could be properly provided at the hearing. See McDonald v. Department and Banking and Finance, 346 So.2d 569, 584 (Fla. 1st DCA 1977) (a petition for a formal 120.57 hearing commences a de novo proceeding, and because the proceeding is intended to formulate final agency action and not to review action taken earlier and preliminarily, the hearing officer may consider changes *1388 or other circumstances external to the application). See also Florida Department of Transportation v. J.W.C. Co., Inc., 396 So.2d 778 (Fla. 1st DCA 1981). At the hearing, TSI presented additional information to provide reasonable assurances that the incinerator facility would comply with the applicable rules on the specific points raised by Hamilton County.
First, contrary to the County's argument, TSI presented evidence describing the type of pollution control system that will be installed at the proposed facility to achieve compliance with Florida air emissions standards. Mr. Basic, president of Basic Environmental Engineering and the designer of the proposed incinerator, testified that the incinerator is a model 3500 Basic incinerator. To meet the acceptable HCL standards, the system will use a dry lime/acid gas scrubber baghouse to trap the particulate matter after they are cooled to 250° and lime is injected. The type of baghouse proposed for the facility will be composed of a number of bags made of Gortex, a laminated fiberglass, which is capable of trapping 99.5% of the particles in the range of 1/10 of a micron in diameter. The bags are capable of trapping cigarette smoke, and are resistant to certain alkalines and acids and temperatures up to about 500° F. TSI also presented testimony that the dry lime scrubber baghouse has been used at a similar facility in Stroud, Oklahoma, which uses a Basic incinerator like the one intended to be used at TSI's facility. Emissions test results from the Stroud facility, which were conducted while the facility was combusting twice the amount of material that is proposed for TSI's facility, met the Florida air quality standards of opacity of less than 5% (visible emissions),[5] 0.0104 grains per dry standard cubic foot,[6] and a 97.2% HCL removal with stuff bleeding.[7] The County's own expert testified that the technology used at the Stroud facility accomplished high particulate matter and HCL removal, that the test results from the Stroud facility demonstrated that the proposed air emission control "will do the job that we hoped it would," and that the application and the modifications show that TSI's facility "probably would be a good facility." TSI also presented the testimony of David Buff, a professional engineer registered in Florida, who had reviewed TSI's application and the draft permit, and had discussed the system with Mr. Basic. Mr. Buff testified that in his professional opinion, the incinerator design itself was "very sound," that the air pollution control system was "very good on this system," and that the operator training and certification requirements contained in the rule "will be performed properly before the source begins operation." He also testified that the dry scrubber baghouse "is the best technology that you can use on these types of sources" and the best way of controlling particulates and hydrogen chloride from these types of sources.
Second, TSI presented evidence regarding the type of cleaning techniques for the baghouse that would be utilized at the facility. Mr. Basic testified that one of two systems could be used to achieve the desired result, the reverse air method (an offline cleaning method) or the reverse pulse jet system (an on-line cleaning system). The reverse air system was preferable because the reverse pulse system allows the compressed air to get very wet and puts the moisture into the reverse side of the bag, which is "really objectionable." However, this problem can be solved if a dryer is added to the system for the compressed air. On the other hand, the reverse air system goes off line and permits air from a blower to reverse through the bags and push out material on the other side of the bag by blowing backwards. He also testified that the market in general is offering the reverse jet pulse system, which is cheaper, and that it is generally recognized in the trade that a reverse jet pulse baghouse will be used if lime is applied as the *1389 means of controlling the HCL. While Mr. Basic did not testify as to which of the two methods would be utilized at the proposed facility, as the Secretary notes in the final order, Mr. Basic testified that either method would work satisfactorily, so it was unnecessary to specify which cleaning procedure would be used.
Finally, neither the fact that at the time of the hearing Mr. Basic was the proposed vendor of the system and had not been contracted to oversee the system nor the fact that the Department may have relied on the "personal guarantees" of Mr. Basic in deciding to issue the permits warrants reversal as to this issue. The final order specifies as one condition to the Department's issuance of the permit that Mr. Basic act as overseer for the construction, installation and testing of the proposed facility. The Department was entitled to issue the construction permits subject to this condition to insure that the facility would be constructed in compliance with the applicable rules. See Kralik v. Dept. of Environ. Reg., 11 F.A.L.R. 669 (Fla.Dept. Environ. Reg. 1989), affirmed without opinion, Decker v. Dept. of Environ. Reg., 545 So.2d 882 (Fla. 5th DCA 1989) (in a proceeding involving a permit for the construction of a marina, the Department issued the permit with the condition that 30 days prior to the construction of the flap gate, the applicant provide the Department with design and engineering plans for the gate where, although no condition of the application and intent to issue addressed the design and maintenance flap gate at the rear of the marina which was necessary to comply with water quality standards, there was evidence presented that the flap gate could be designed, installed and operated in a manner to ensure the flushing necessary to comply with water quality standards). The Department's decision to issue the permits was based not only on Mr. Basic's testimony but on the other evidence presented at trial, including the application itself, diagrams of the facility, evidence concerning the use of similar equipment at other facilities, and testimony from the County's own expert witness and other witnesses.
In view of the foregoing discussion, we hold that the Department's decision to accept TSI's assurances of compliance with statutes and rules governing air and water pollution as being reasonable under the circumstances is supported by competent, substantial evidence in the record. In so ruling, we are also mindful, as explained by appellees at oral argument, that the permits now under review only authorize construction of the facility. The facility cannot be operated until an operational permit is issued pursuant to tests demonstrating that emissions and other potential pollution sources meet statutory limits. See § 403.707(1), Fla. Stat. (1989) (no solid waste management facility may be operated without an appropriate and currently valid permit issued by the Department); Fla. Admin. Code Rule 17-2.210(2) (air operation permit required subsequent to construction in accordance with Chapter 17-2 and 17-4, Florida Administrative Code).

V.
Hamilton County also contends that the Secretary of the Department erred in striking its exceptions to the recommended order as untimely. It is undisputed that the County filed its exceptions with the Department's Office of General Counsel on the sixteenth day from the date on which the recommended order was filed, or one day after the time period stated in rule 17-103.200(1). Rule 17-103.200(1) provides in part:
Within fifteen days from the date of filing of a Recommended Order with the Clerk of DOAH, in accordance with Section 120.57(1), F.S., parties to the proceeding may file written Exceptions to the Recommended Order in the Department's Office of General Counsel, with service of copies on all parties. Exceptions not filed (received) in the Office of General Counsel within 15 days shall be rejected.
(Emphasis added.) Hamilton County had apparently filed the exceptions the previous *1390 day with the Division of Administrative Hearings. The County argues that the Secretary erred in striking the exceptions without first giving the County notice of intent to strike the exceptions and an opportunity to file affidavits and other supporting evidence to demonstrate inadvertence, mistake, or excusable neglect. We agree.
A similar issue was raised in a recent case from this court, State Department of Environmental Regulation v. Puckett Oil Co., Inc., 577 So.2d 988 (Fla. 1st DCA 1991), involving the assessment of a sanction against the Department for late filing of a response. The Department filed its response to Puckett Oil's petition for award of costs and fees twenty-four days after the date on which the petition was filed, although the applicable rule, rule 22I-6.035(5)(a), provides that DER "shall" file its response within twenty days of the filing of the petition. After Puckett filed a motion requesting that a summary final order be entered due to the Department's failure to file a responsive pleading within the time required by the rule, and a motion to strike the Department's response, the hearing officer entered a summary final order awarding Puckett attorney's fees and costs. The Department subsequently filed a motion to vacate the summary final order and submitted an affidavit stating that its late filing was due to excusable neglect on part of its attorney. This court reversed the summary final order and remanded the cause with directions that the Department be permitted to file its response and that the hearing officer thereafter consider the response on its merits. Among other things, we noted that if a provision like rule 22I-6.035(5)(a), though seemingly mandatory in terms because of the use of the word "shall," is designed simply to further the orderly conduct of business, the provision is generally deemed directory only. 577 So.2d at 991. Also, like courts in civil proceeding faced with untimely filed answers or responses, the DOAH has discretion to extend the time for filing of a responsive pleading, notwithstanding that the rule governing the particular pleading uses mandatory language as to time requirements for filing. Id. Additionally, in ruling that the Department had not waived its right to respond to the petition, we noted that:
... in order for waiver to be applied based on the passage of time, we consider it essential for a showing to be made that the party against whom waiver is asserted has received notice sufficient to commence the running of the time period within which the response is required... . Thus, if it is clearly established that a party has received notice informing him or her of the requirement of taking certain action within a specified period of time, and such party delays for a protracted length of time in taking the required action, we consider that the party may be deemed to have waived his or her right to so act.
Id. at 993.
In the case now before us, despite the language in rule 17-103.200(1) providing that exceptions not filed in the Office of the General Counsel within fifteen days after the date on which the recommended order is filed "shall" be rejected, we hold that the Secretary erred in striking the County's exceptions to the recommended order as untimely, without first considering the County's argument that the late filing was due to excusable neglect, without giving the county notice of intent to strike the exceptions for this reason and according the County a reasonable opportunity to respond, and without determining that the County waived its right to file exceptions to the recommended order. Like rule 22I-6.035(5)(a), rule 17-103.200 is designed simply to further the orderly conduct of business, and should be construed as directory only. Notwithstanding the mandatory language of rule 17-103.200, the Department had discretion to extend the time for filing exceptions to the recommended order.
However, despite the statement in the final order granting the motion to *1391 strike the exceptions, the Secretary nevertheless ruled on the merits of all of the County exceptions "in order to facilitate a complete review ... in the event of subsequent appellate review." For this reason, the error is harmless.
For the foregoing reasons, the orders under review are
AFFIRMED.
SHIVERS and KAHN, JJ., concur.
NOTES
[1] "HCL" refers to hydrogen chloride.
[2] We rule that this point was preserved for appellate review.
[3] The laws relating to waste management (sections 403.701  403.864, Florida Statutes) were substantially revised in 1988 to impose new standards and permitting requirements specifically for waste management and to give DER authority to promulgate new rules relating to waste management, including rules specifically addressing the management of biohazardous and biological waste within the state as contemplated by TSI's proposed facility. See Ch. 88-130, Laws of Fla.
[4] It is undisputed that the proposed facility in question may be properly classified as a solid waste management facility according to the relevant statutes and rules. It also is undisputed that TSI submitted an application to operate or construct two biohazardous waste incinerators on its facility, and that the storage areas are an integral part of the facility. Rule 17-2.100(95) defines "incinerator" as "[a] combustion apparatus designed for the ignition and burning of solid, semi-solid, liquid or gaseous combustible wastes." Section 403.703(14), Florida Statutes (1989), defines "volume reduction plant" as including "incinerators, pulverizers, compactors, shredding and baling plants, composting plants, and other plants which accept and process solid wastes for recycling or disposal." Section 403.703(10) defines "solid waste management facility" as including "any solid waste disposal area, volume reduction plant, transfer station, or other facility, the purpose of which is resource recovery or the disposal, recycling, processing, or storage of solid waste. The term does not include facilities which use or ship recovered materials unless such facilities are managing solid wastes."
[5] See Fla. Admin. Code Rule 17-2.600(1)(a)1.
[6] See Fla. Admin. Code Rule 17-2.600(1)(d)3.a.
[7] See Fla. Admin. Code Rule 17-2.600(1)(d)3.b.