BOOTH, Judge.
This cause is before us on appeal of a final order of the Department of Health and Rehabilitative Services (the Department), denying the application of appellant, Manasota Osteopathic General Hospital, Inc., for a certification of need (CON) to construct an osteopathic teaching hospital in the Venice area of Sarasota County. Appellant presents two issues for our consideration: (1) that the Department erred in finding that appellant would not be a true osteopathic facility, and (2) that it was error to grant appellees Venice Hospital, Englewood Community Hospital, and Me *711 morial Hospital standing to contest appellant’s application.
Appellant’s first argument involves a factual determination, for which the standard of review is whether competent, substantial evidence supports the Department’s decision. See Heifetz v. Department of Business Regulation, 475 So.2d 1277, 1281 (Fla. 1st DCA 1985); McDonald v. Department of Banking and Finance, 346 So.2d 569, 579 (Fla. 1st DCA 1977); and § 120.68(10), Fla.Stat. After careful review of the record, we are convinced that ample competent, substantial evidence supported the ruling of the Department on this point. Accordingly, we affirm as to issue one.
As to the second issue, the relevant facts are that, initially, the Department reviewed appellant’s application and granted it. Only later, when three local allopathic hospitals [1] became aware of the proposed agency action and petitioned for a Section 120.57(1) hearing, did the Department hold a hearing and ultimately deny the application. Appellant urges that none of its adversaries had standing to contest the issuance of the permit, and therefore, the hearing should be declared a nullity and the initial grant of the application reinstated.
Party status in Section 120.57(1) hearings requires a “substantial interest” in the outcome, such interest being defined as a sufficiently immediate injury in fact within the zone of interest the proceeding was designed to protect. Agrico Chemical Company, Inc. v. Department of Environmental Regulation, 406 So.2d 478 (Fla. 2d DCA 1981). In order to show a substantial interest in a CON proceeding, appellant maintains that a would-be party must show he will be substantially affected under Rule 10-5.02(20), Florida Administrative Code.[2] Rule 10-5.02(20) defines “affected persons” to include “health care facilities and health maintenance organizations located in the health service area in which the service is proposed to be offered or developed which provide services similar to the proposed services under review.”
In Gulf Coast Hospital, Inc. v. Department of Health and Rehabilitative Services, 424 So.2d 86 (Fla. 1st DCA 1982), this court held that in determining need for osteopathic facilities, HRS must follow the dictates of Section 381.494(2), Florida Statutes, and make its determination based on need and availability in the community of osteopathic services and facilities. The court in Gulf Coast held that Section 381.-494(2), aimed at allowing distinct osteopathic facilities where needed, precluded the use of statistics based on overbedding in nonosteopathic facilities to deny a CON for an osteopathic facility. The case thus deals with need and availability for osteopathic services under Section 381.494(2) and not with standing under Chapter 120 and pertinent rules, which is a broader concept recognizing the rights of “affected persons” to participate in the certification process. “Standing” in these types of proceedings is not limited, as contended by appellant, so that only osteopathic facilities may challenge the application of an osteopathic facility.
The competition and interrelation between medical facilities as regards patients, doctors, and support staff may transcend the boundaries of medical dogma. Thus, although statistics on overbedding in facilities primarily devoted to the practice of allopathic medicine cannot be used as a *712 basis for denying need for distinct osteopathic facilities, allopathic facilities do have standing to assert economic and staffing difficulties in the service area as considerations in the certification proceeding. It is in the public interest that these and other legitimate professional concerns, as well as expertise and information from the medical community, be made available in the certification process.
The record before us contains ample evidence supporting HRS’s determination that appellee hospitals would suffer a substantial injury within their legitimate zones of interest if appellant received the requested CON and that they have standing to participate in the proceedings. For example, the record below establishes that the Venice area of Sarasota County was suffering from a significant shortage of trained medical support staff, critical personnel of the kind required in both allopathic and osteopathic hospitals. There was evidence that approval has already been given to open a new, unrelated, 120-bed osteopathic hospital in the service area. See Doctors’ Osteopathic Medical Center, Inc. v. Department of Health and Rehabilitative Services, 498 So.2d 478 (Fla. 1st DCA 1986). Further evidence indicated that appellant plans to staff its facility largely with area doctors having existing practices in order to become profitable as soon as possible, resulting in a possible shortage of doctors in the area, particularly osteopaths. Appellee hospitals are already operating at a minimum level of profitability, and there is strong record evidence that allowing appellant’s facility to open would force appel-lee hospitals to raise their fees, which would substantially affect the cost of area medical care.
Accordingly, the order below is affirmed.
WENTWORTH and BARFIELD, JJ., concur.

. The differences between the medical philosophies of allopathy and osteopathy are extensively discussed in Gulf Coast Hospital v. Department of Health and Rehabilitative Services, 424 So.2d 86 (Fla. 1st DCA 1982), at pages 88-90. Webster’s Third New International Dictionary further defines osteopathy as “a system of medical practice based on the theory that diseases are due chiefly to a loss of structural integrity in the tissues and that this integrity can be restored by manipulation of the parts supported by the use of medicines, surgery, proper diet, and other therapy.” Allopathy is defined as a "system of medical practice that aims to combat disease by use of remedies producing effects different from those produced by the special disease treated; a system of medical practice making use of all measures that have proved of value in treatment of disease.”

. Now Rule 10-5.002(2), Florida Administrative Code.