VAN NORTWICK, J.
Beverly Enterprises, which owns and operates the Emerald Oaks Care Center in Sarasota, Florida, appeals a final order of the Agency for Health Care Administration which gives the Emerald Oaks Care Center a conditional licensure rating. Because competent, substantial evidence supports the findings in the order on appeal, we affirm.
The Agency for Health Care Administration (AHCA) conducted an inspection of the Emerald Oaks nursing home, owned and operated by Beverly Enterprises. This Sarasota facility was inspected, without notice, on February 29, 1996, whereupon the records of several randomly selected residents were reviewed, and several deficiencies were found.
A follow-up inspection, which was also unannounced, was conducted on April 25, 1996, and several deficiencies were again found. One area found to be deficient in February which had not been satisfactorily remedied by April, involved the number of staffing hours by certified nursing assistants. On another matter, in February 1996,19 residents (22% of the total population) had pressure sores, 14 of which had no clinical explanation for their cause, and three residents had pressure sores upon admittance which had worsened in severity during their residency. Other deficiencies were detected as-well by AHCA, including inadequate care plans.
Following the April 1996 inspection, AHCA reduced the Emerald Oaks’ license to a “conditional” rating. The nursing home sought a formal administrative hearing, and the matter was referred to the Division for Administrative Hearings. Thereafter, an Administrative Law Judge (ALJ) issued a recommended order which found that the conditional licensure rating was warranted given the deficiencies found. In so concluding, the ALJ found as follows:
11. Another area addressed in the February survey and the April follow-up survey concerned the extent to which residents developed pressure sores. A pressure sore is a wound on the skin caused by pressure. These wounds are staged I through IV, with IV being the most severe. At Stage I the wound is usually a red area; at Stage II it is an open area; at Stage III the wound is deeper and involves muscle; and a Stage IV pressure sore involves bone, muscle, tissue and nerves.
12. Federal Rule, 42 C.F.R. 483.25(c), requires that a nursing home resident not develop pressures sores unless the individual’s clinical condition demonstrates that the sores were unavoidable. If a resident has pressure sores, nursing homes must provide treatment and services necessary to promote healing and prevent new sores from developing.
*1135 18. Most pressure sores are avoidable and can be prevented, by diligent turning of residents, at least every two hours, to relieve pressure on a given area of skin. Ordinarily, if these procedures are followed, residents should not develop pressure sores unless the resident is debilitated, that is suffering from a serious disease such as cancer.
14. The February 1996 survey and the April 1996 follow-up survey revealed a high incidence of pressure sores among the residents of Emerald Oaks. At the time of the February 1996 survey, twenty-two percent (22%), or nineteen Emerald Oaks residents, had pressure sores. Of these residents fourteen had pressure sores which were in-house acquired and for which there is no clinical explanation. This percentage was high when compared to the industry average of five percent (5%). At the time of the April 1996 follow-up survey, the percentage of Emerald Oaks residents who had pressure sores remained high, at twenty-one percent (21%).
17. According to records reviewed during the February 1996 survey, Resident 7 had no pressure sores when admitted to Emerald Oaks in November or December 1995. However, on January 13, 1996, a Stage III pressure sore was first observed on this resident and noted by Emerald Oaks staff. Although Resident 7 was at risk for pressure sores due to his decreased mobility and incontinence, with proper turning and repositioning of resident, the in-house acquired pressure sore was avoidable.
18. The April 1996 follow-up survey also revealed that residents who had no pressure sores when admitted to Emerald Oaks, developed avoidable pressure sores while at the facility. Furthermore, at least one resident had one Stage I pressure area and one Stage II pressure sore at the time of admission to Emerald Oaks, but shortly after coming to the facility developed two more pressure sores. These two in-house acquired pressure sores, staged as a II and a III, were avoidable.
19. In both the February and April surveys, the in-house acquired pressure sores were avoidable, notwithstanding the fact that many of the residents were a high risk for developing them. The high risk was related to conditions such as the residents’ decreased mobility or immobility. Residents with these conditions required a great deal, if not total assistance, from the Emerald Oaks staff in moving from one position to another. Consequently, with proper turning and repositioning, these pressure sores were avoidable.
27. All of the violations for which Emerald Oaks was cited in the February 1996 and April 1996 surveys were Class III deficiencies with the exception of the F314 deficiency, which was a Class II deficiency. Tag 314 was deemed to be a Class II deficiency because of the number of residents who had developed pressure sores and the harm that they could cause residents. An additional consideration was that the in-house acquired pressure sores were avoidable.
The recommended order was adopted in full by AHCA in its final order.
On appeal, Beverly Enterprises argues that there was no evidence the class III deficiencies cited in the February 1996 survey report or the April 1996 survey report were not corrected within the time frame set by AHCA, because (i) Emerald Oaks was given 60 days following the February 1996 inspection to correct the noted deficiencies, but the second inspection occurred 56 days thereafter, and (ii) the April 1996 inspection focused on different patient files than were considered in the first inspection, and so, by definition, the second inspection did not yield any “uneor-rected” deficiencies.
A class II deficiency is one which the agency determines to have a direct or *1136 immediate relationship to the health, safety or security of nursing home residents. § 400.23(9)(b), Fla. Stat. (1995). A single class II deficiency is a sufficient basis to warrant issuance of a conditional license. § 400.23(8), Fla. Stat. A class III deficiency is a deficiency which the agency determines to have an indirect or potential relationship to the health, safety, or security of the nursing home residents, section 400.23(9) (c), and when it goes without correction within the time frame set by the agency, it may also serve as the basis for issuance of a conditional rating, section 400.23(8). If the deficiencies found at Emerald Oaks were restricted to class III deficiencies, then the above arguments raised by Beverly Enterprise would have some merit. However, a class II deficiency was detected in both the February 1996 inspection and the April 1996 inspection, both of which were related to the development of pressure sores on patients. The ALJ found that AHCA met its burden of proving the asserted deficiencies. While Beverly Enterprises produced evidence indicating that the bed sores developed on patients were unavoidable, the ALJ accepted the expert testimony produced by AHCA to the contrary, and we find no basis for disturbing that finding. Among the witnesses testifying for the agency was Linda Harkin, a registered nurse with 33 years experience, who specifically testified as to why the pressure sores found on the Emerald Oak patients were avoidable. Thus, competent, substantial evidence supports the ALJ’s findings. L.G.H. v. Department of Children and Family Servs., 735 So.2d 548 (Fla. 1st DCA 1999); Manasota Osteopathic Gen. Hosp., Inc. v. State, Department of Health and Rehabilitative Servs., 523 So.2d 710 (Fla. 1st DCA 1988).
Accordingly, the order under review is AFFIRMED.
BOOTH AND PADOYANO, JJ., CONCUR.