700 So.2d 113 (1997)
SAVE ANNA MARIA, INC., Appellant/ Cross-Appellee,
v.
DEPARTMENT OF TRANSPORTATION and Department of Environmental Protection, Appellees/ Cross-Appellants.
No. 96-02258.
District Court of Appeal of Florida, Second District.
October 8, 1997.
*114 David M. Levin and Andrew K. Fritsch of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, Sarasota, for Appellant.
Pamela S. Leslie and Marianne A. Trussell, Tallahassee, for Appellee Department of Transportation.
Robert G. Gough, Tallahassee, for Appellee Department of Environmental Protection.
FRANK, Judge.
In this case, both the Department of Transportation (DOT) and an environmental group, Save Anna Maria, Inc. (SAM), have challenged the decision of the Department of Environmental Protection (DEP) to deny DOT a dredge and fill permit to build a new bridge over Sarasota Pass from Bradenton to Anna Maria Island. SAM contends that the DEP's decision was erroneous as to the public interest criteria and fears that, left unchallenged, that decision will become res judicata when the issue is revisited in another day in court. DOT argues that the permit should have been issued because the department provided reasonable assurance that water quality standards would not be violated by the building of the new bridge. We have *115 reviewed all aspects of the final order and conclude that both challenges must fail because the agency was well aware of and correctly applied the standards for administrative review of the hearing officer's order.
In 1992, the Department of Transportation proposed building a new bridge to Anna Maria Island. Thus, DOT applied for a dredge and fill permit to replace the existing bascule bridge with a high-level, fixed-span bridge just south of the existing bridge. DOT negotiated for several months with the Department of Environmental Protection, which issued a notice of permit denial in February of 1993. DEP's concern was that the proposed bridge would have a detrimental impact upon the seagrass nursery areas and productive shallow bottom areas. DOT continued its negotiations with DEP, however, and in spite of the issuance of the notice of permit denial, DEP approved the project and issued an intent to issue a dredge and fill permit for the proposed project on May 2, 1995.
Robert Van Wagoner and Save Anna Maria, Inc. then entered the fray, challenging the intent to issue and commencing administrative action. Their consolidated cases were heard at a final hearing that began on December 4, 1995. The hearing officer issued a recommended order on February 16, 1996, proposing denial of the permit. The hearing officer found that DOT failed to provide DEP with reasonable assurance that the project was clearly in the public interest as required by section 403.918(2), Florida Statutes (1991), and further found that DOT failed to provide reasonable assurance that the project would not degrade existing ambient water quality as required by rule 62-4.242(2)(a), Florida Administrative Code.
On May 14, 1996, DEP issued a final order that denied the DOT's dredge and fill permit. Rather than adopting all of the hearing officer's recommendations, the DEP rejected the hearing officer's findings with respect to the public interest and found that the DOT did in fact provide reasonable assurance that the proposed project was clearly in the public interest. Because the DOT failed to provide reasonable assurance that water quality standards would not be violated, however, the permit was denied.
The ensuing appeal has reached us in an unusual procedural posture. Although prevailing in the agency action, SAM filed a notice of appeal. DOT, the aggrieved party, then cross-appealed. Thus, our first consideration is whether SAM's appeal should be permitted. This is not an easy question to answer. The general rule is that parties cannot file proceedings to review an order of judgment in their favor. See Employers Fire Ins. Co. v. Blanchard, 234 So.2d 381 (Fla. 2d DCA 1970). In dismissing a petition for common law certiorari, the Blanchard court observed:
Peculiarly enough, however, petitioners here are asking us to review and quash an order which was actually in their favor, namely, an order granting their motion to dismiss the amended complaint. It is true that some of the grounds of the motion to dismiss were denied, but one ground of substance was upheld; so the force and impact of the order entered, as well as the express language of it, was to dismiss the amended complaint. This was precisely, and all, that was sought by the motion to dismiss.
234 So.2d at 382. Under the reasoning of Blanchard, SAM has no standing to pursue an appeal in this case. SAM sought to block the building of a new bridge to Anna Maria Island and received precisely that relief.
On the other hand, SAM urges the view as expressed in State Rd. Dep't of Florida v. Zetrouer, 105 Fla. 650, 652, 142 So. 217, 218 (Fla.1932): "The mere fact that a litigant secures a judgment in his favor does not necessarily mean that there may not be some aspect of said judgment at which he would be aggrieved and which would present grounds for review by an appellate court." Thus, when a judgment is not wholly in a party's favor, that party may seek appellate review. See Katz v. Red Top Sedan Serv., Inc., 136 So.2d 11 (Fla. 3d DCA 1962). Res judicata and collateral estoppel concerns were addressed in this context in General Dev. Utilities, Inc. v. Florida Pub. Service Comm'n, Div. of Admin. Hearings, 385 So.2d 1050 (Fla. 1st DCA 1980). Although in that case, which involved rule-making, the court found *116 that the appellants were not aggrieved parties and dismissed the appeal, the court did note that the hearing officer's findings on certain statutory and constitutional issues were immaterial to the decision and thus could not be a basis for a claim of res judicata or collateral estoppel. In so stating, however, the court did not hold outright that those concerns could never be a basis for appeal by a party who prevailed on the agency level. On balance, these authorities compel the conclusion that SAM should be permitted to prosecute this appeal.
SAM contends that the DEP erred, first, by its refusal to accept the hearing officer's factual finding that DOT's proposed seagrass mitigation plan did not meet the DEP's established mitigation criteria, and, second, by rejecting the hearing officer's finding that there would be significant environmental impact from direct discharge of stormwater into Anna Maria Sound, an outstanding Florida water. We reject both of those arguments, as well as other issues raised by SAM that do not merit discussion.
The burden of showing entitlement to a dredge and fill permit is on the applicant, DOT. See Department of Transp. v. J.W.C. Co., 396 So.2d 778 (Fla. 1st DCA 1981). Under rule 62-312.060(10), Florida Administrative Code, the DEP is required to determine "whether or not the application, as submitted, meets the criteria contained in Sections 403.918(1) and (2)(a)1.-7. and 403.919, F.S." Section 403.918, Florida Statutes (1991), provides in pertinent part:
(1) A permit may not be issued under 403.91-403.929 unless the applicant provides the department with reasonable assurance that water quality standards will not be violated.
(2) A permit may not be issued under ss. 403.91-403.929 unless the applicant provides the department with reasonable assurance that the project is not contrary to the public interest. However, for a project which significantly degrades or is within an Outstanding Florida Water, as provided by department rule, the applicant must provide reasonable assurance that the project will be clearly in the public interest.
(a) In determining whether a project is not contrary to the public interest, or is clearly in the public interest, the department shall consider and balance the following criteria:
1. Whether the project will adversely affect the public health, safety, or welfare or the property of others.
Review of the public interest criteria is limited to environmental impacts. See Miller v. Department of Envtl. Regulation, 504 So.2d 1325 (Fla. 1st DCA 1987).
Because the project would have an impact upon the seagrass density in the vicinity of the construction and in the area shaded by the new bridge, the DEP was required to consider the DOT's anticipated efforts to ameliorate the detrimental effects. The DEP has the exclusive final authority to determine the sufficiency of the proposed seagrass mitigation. See 1800 Atlantic Developers v. Department of Envtl. Regulation, 552 So.2d 946 (Fla. 1st DCA 1989). The hearing officer's "findings" related to the sufficiency of mitigation are essentially conclusions of law and are not binding on DEP. Our review of the final order and of the record compels the conclusion that the DEP did not reject any of the hearing officer's findings on the sufficiency of mitigation but merely balanced them to reach the ultimate legal conclusion that DOT had provided reasonable assurance that the proposed mitigation would offset the adverse impacts of the proposed bridge. As stated in 1800 Atlantic Developers, 552 So.2d at 951,
Section 403.918(2)(b) requires that DER, not the hearing officer, consider and determine what measures to mitigate the adverse effects that may be caused by the project will be legally sufficient under the statute. This task cannot be delegated to the hearing officer. It is the responsibility of DER, not the hearing officer, to establish mitigative measures acceptable to it under the statute.... The prescription in section 120.59(1)(b)9 that a hearing officer's findings of fact are binding on the agency when supported by competent substantial evidence does not encompass findings on the sufficiency of the mitigative conditions agreed to by DER and 1800 *117 Atlantic, as such findings are properly characterized as conclusions of law.
SAM's further argument that DOT cannot have given reasonable assurance of the success of the mitigation as a matter of law because part of the assurance is predicated on future monitoring of the seagrass planting and on additional planting if necessary is also without merit. SAM relies on the case of Metropolitan Dade County v. Coscan Florida, Inc., 609 So.2d 644 (Fla. 3d DCA 1992), for the proposition that, as a matter of law, reasonable assurances cannot be based on future monitoring. As DOT points out, however, the problem in Coscan was not that monitoring was to be used as part of reasonable assurance. Rather, the hearing officer had deferred to a future date a determination of whether reasonable assurance had been provided. In this case, DEP considered the proposed seagrass planting plan, the proposed monitoring, and the proposed conditional additional seagrass bed planting and concluded as a matter of law that DOT had provided reasonable assurance that mitigation for the proposed bridge would be successful. SAM has not pointed to anything that would cause this court to overturn that conclusion.
Another concern raised by SAM in this appeal is whether the DEP properly relied upon the reasonableness of the assurances made to the Southwest Florida Water Management District (SWFWMD) concerning stormwater impact upon both water quality and public interest. SAM asserts that DEP's reliance on the SWFWMD permitting process comprised an improper delegation of its statutory duties to another state agency and cites Booker Creek Preservation, Inc. v. Southwest Florida Water Management Dist., 534 So.2d 419 (Fla. 5th DCA 1988), for that proposition. As both DOT and DEP point out, however, Booker Creek is not applicable in this context. In Booker Creek, the court held invalid SWFWMD's attempt to exempt by rule from its permitting regulation certain activities in isolated wetlands on the ground that such activities were regulated by other state agencies. The court held that SWFWMD could not delegate its statutory duty to be responsible for preserving Florida's isolated wetlands to other state agencies. In this case, no such jurisdictional issue arises. Rather, SWFWMD is authorized by section 373.413, Florida Statutes (1991), to require a stormwater management and storage of surface water (MSSW) permit for the bridge. Rule 40D-4 of the Florida Administrative Code requires such a permit. Before issuing the permit SWFWMD was required to determine the stormwater discharge water quality issues. SAM had the right to challenge that determination in the permit proceeding but failed to do so.
In its cross-appeal, the DOT contends that, contrary to the conclusion in the final order, the record contains competent, substantial evidence of reasonable assurances that the project would not degrade water quality. DOT, as the applicant for the dredge and fill permit, has the burden of convincing the hearing officer by a preponderance of the evidence that the proposed project would not degrade the ambient water quality of Sarasota Pass in contravention of rule 62-4.242(2), Florida Administrative Code. See Florida Dep't of Transp. v. J.W.C. Co., 396 So.2d 778. DOT does not contest the legal requirement to demonstrate that the project would not result in any discharges to an outstanding Florida water, see Save Our Suwannee, Inc. v. Piechocki, 18 F.A.L.R. 1467 (Fla. DEP 1996), or to provide sufficient evidence to establish ambient water quality by showing either the water quality that (1) "could reasonably be expected to have existed for the baseline year of an outstanding Florida water designation," or (2) "existed during the year prior to the date of a permit application." Rule 62-4.242(2)(c), Fla. Admin. Code. No one disputed that the proposed bridge would discharge water into Sarasota Pass. Therefore, DOT's burden was to establish existing ambient water quality.
The hearing officer concluded that DOT provided no ambient background data on turbidity, biological integrity, lead, cadmium, zinc, copper, or oil and grease, nor did DOT provide reasonable assurances that discharges from the proposed bridge could not result in a lowering of water quality for those parameters because the discharges would not contain those pollutants. DOT has argued *118 that the question of "reasonable assurances" is a mixed question of law and fact, see Save Our Suwannee, so that the DEP was free to overturn the hearing officer's findings if competent, substantial evidence supported a finding of reasonable assurances. The problem, however, was that DOT's failure to furnish any baseline year evidence of water quality as to the factors enumerated above rendered the agency unable to make an informed analysis or to reach the conclusion that DOT had provided reasonable assurance that the proposed project would not degrade the outstanding Florida waters in which it would be situated.
The hearing officer's conclusion that DOT did not provide data on existing ambient background for turbidity, biological integrity, lead, cadmium, zinc, copper, oil or grease is a pure finding of fact. The DEP was bound by the finding and was not authorized to reject it or to reweigh the evidence. See Heifetz v. Department of Bus. Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985); §§ 120.57(1)(b)10, 120.68(10), Fla. Stat. (1995). The conclusion that DOT had not provided "reasonable assurances" flowed inexorably from that finding and neither DEP nor this court can overturn it.
Accordingly, the Department of Environmental Protection's final order denying a dredge and fill permit for the purpose of demolishing the existing drawbridge from Bradenton to Anna Maria Island and constructing a fixed-span, high-level drawbridge in its stead is affirmed.
PARKER, C.J., and NORTHCUTT, J., concur.