VILLANTI, Judge.
 

 The Peace River/Manasota Regional Water Supply Authority (the Authority), joined by three counties and the Sierra Club, appeals the final order issued by the Department of Environmental Protection (DEP) that granted various permits to IMC Phosphates Company (IMC) to operate a new phosphate mine. The Authority raises three grounds for review: (1) that the Administrative Law Judge (ALJ) erred when he determined that the Authority lacked standing to challenge IMC’s permit application; (2) that the ALJ erred by refusing to consider evidence of the cumulative impact of IMC’s proposed mining activities on the Peace River itself and
 
 *1081
 
 the Peace River basin as a whole; and (B) that various procedural irregularities occurred that rendered portions of the proceedings fundamentally unfair. As to ground one, we hold that the Authority did have standing to challenge IMC’s permit application and to prosecute this appeal, and we write to explain our reasoning. As to ground two, we affirm and write to explain why, given the plain language of the statutory provision at issue and the facts as found by the ALJ, such a conclusion is required. Finally, as to ground three, we affirm for the reasons explained in our companion opinion in
 
 Charlotte County v. IMC Phosphates Co.,
 
 No. 2D06-3848, 18 So.3d 1089, 2009 WL 331661 (Fla. 2d DCA Feb. 10, 2009).
 

 Background
 

 The events culminating in this appeal began in 2000 when IMC filed a Consolidated Development Application with DEP seeking an environmental resource permit that was required before it could begin construction of a new phosphate mine on a 20,675-acre tract of land. At the same time, IMC sought approval of a conceptual reclamation plan, which would govern IMC’s obligations to reclaim the wetlands after mining. After DEP issued a notice of intent to issue the permits in January 2003, the Authority, Charlotte County, Lee County, Alan Behrens, and DeSoto Citizens Against Pollution, Inc., filed petitions for formal administrative proceedings to challenge the issuance of the permits.
 
 [1]
 
 All of the petitions were subsequently consolidated.
 

 In 2004, in response to certain DEP rulings concerning other pending permit applications, IMC filed an amended application that reduced the size of the proposed mining project to 4197 acres. After DEP issued revised notices of intent to issue the permits, Sarasota County filed a petition in opposition to the revised project. All of the administrative proceedings relating to this project were subsequently consolidated and set for hearing.
 

 Prior to the hearing, IMC filed what was essentially a motion in limine seeking to exclude any evidence of the cumulative impacts of this project and others on the Peace River and the Peace River basin based on the provisions of section 373.414(8)(b), Florida Statutes (2004). The ALJ granted this motion, thus precluding the Authority from presenting evidence concerning the cumulative impacts of all of the previous and pending unrelated mining activity in the Peace River basin and the potential “big picture” incremental impact of IMC’s proposed project. In light of this ruling, the Authority proffered its cumulative impacts evidence during the hearing.
 

 Also prior to the hearing, IMC filed a “Motion to Challenge Standing of All Petitioners,” alleging as to the Authority that it did not have standing to challenge the issuance of the permit because its substantial interests would not be affected if the permit issued. The parties then stipulated to the ALJ considering the standing issue during the administrative hearing on the merits.
 
 [2]
 

 After eight weeks of testimony, the ALJ issued his recommended order. In that
 
 *1082
 
 order, the ALJ found that the Authority did not have standing because its substantial interests were not affected by the order; however, the ALJ noted that the issue was moot because the Authority had fully participated in all the proceedings. The ALJ also reaffirmed his ruling that IMC was not required to address the cumulative impacts of the project under the plain language of section 373.414(8)(b). In addition, the ALJ recommended that DEP grant IMC’s permit application but only after implementing a series of additional permit conditions that would strengthen the environmental protections. After further proceedings not relevant to the issues discussed in this opinion, DEP adopted the majority of the recommended order, including the ALJ’s rulings on standing and the admissibility of the evidence concerning cumulative impacts. Based on the ALJ’s findings of fact and conclusions of law and DEP’s own analysis of the law, DEP granted the permits sought by IMC but with the additional conditions recommended by the ALJ. The Authority then brought this appeal of DEP’s ruling.
 

 Standard of Review
 

 In an appeal from final administrative action, this court reviews the findings of fact made by the ALJ and adopted by the administrative agency to determine whether they are supported by competent, substantial evidence. § 120.68(7)(b), Fla. Stat. (2004);
 
 see also Pauline v. Lee,
 
 147 So.2d 359, 363 (Fla. 2d DCA 1962);
 
 Reily Enters., LLC v. Fla. Dep’t of Envtl. Prot.,
 
 990 So.2d 1248, 1251 (Fla. 4th DCA 2008);
 
 Maynard v. Fla. Unemployment Appeals Comm’n,
 
 609 So.2d 143, 145 (Fla. 4th DCA 1992). This court “shall not substitute its judgment for that of the administrative law judge as to the weight of the evidence on any disputed finding of fact.” § 120.68(10);
 
 see also Pauline,
 
 147 So.2d at 363 (holding that this court will not “substitute its judgment for that of the administrative fact finder who heard the testimony and was in a position to evaluate the credibility of witnesses” because “[e]vi-dence is weighed by the administrative agency and not by the courts”);
 
 Maynard,
 
 609 So.2d at 145 (“[T]he credibility of witnesses and testimony is a matter which falls solely within the purview of the ... finder of fact”.). Moreover, when an agency has exercised its discretion on a matter, this court “shall not substitute its judgment for that of the agency on an issue of discretion.” § 120.68(7);
 
 see also Sw. Fla. Water Mgmt. Dist. v. Save the Manatee Club, Inc.,
 
 773 So.2d 594, 597 (Fla. 1st DCA 2000) (“[A] discretionary decision must be affirmed on appeal if the agency has not exceeded the scope of its discretionary authority.”). However, this court reviews the agency’s conclusions of law de novo. § 120.68(7)(d);
 
 see also Sw. Fla. Water Mgmt. Dist.,
 
 773 So.2d at 597.
 

 The Authority’s claims concerning both standing and the cumulative impacts evidence are claims concerning statutory interpretation and the application of the statutes to the facts of the case. Thus we review the interpretation of the statutory language de novo, but we must defer to the ALJ’s factual findings that are supported by competent, substantial evidence when applying the statute to the facts.
 

 Standing in the Proceedings Below
 

 The Authority first contends that the ALJ and DEP erred by determining that the Authority did not have standing in the administrative proceedings. While this argument is technically moot since the ALJ allowed the Authority to fully participate below, we address the issue because it is raised by IMC in every permitting case and because the ALJ’s and DEP’s conclusions on this issue are incorrect.
 

 As a general proposition, “[sjtanding is a legal concept that requires
 
 *1083
 
 a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly.”
 
 Hayes v. Guardianship of Thompson,
 
 952 So.2d 498, 505 (Fla.2006);
 
 see also Hutchison v. Chase Manhattan Bank,
 
 922 So.2d 311, 315 (Fla. 2d DCA 2006);
 
 Gen. Dev. Corp. v. Kirk,
 
 251 So.2d 284, 286 (Fla. 2d DCA 1971) (“Standing is, in the final analysis, that sufficient interest in the outcome of litigation which will warrant the court’s entertaining it”). Thus standing depends on the nature of the injury asserted and the purpose and scope of the administrative proceeding.
 
 Agrico Chem. Co. v. Dep’t of Envtl. Regulation,
 
 406 So.2d 478, 482 (Fla. 2d DCA 1981);
 
 Friends of the Everglades, Inc. v. Bd. of Trs. of the Internal Improvement Trust Fund,
 
 595 So.2d 186, 189 (Fla. 1st DCA 1992);
 
 see also Hayes,
 
 952 So.2d at 505. It does
 
 not
 
 depend on the elements or merits of the underlying claim.
 
 See St. Martin’s Episcopal Church v. Prudential-Bache Sec., Inc.,
 
 613 So.2d 108, 110 n. 4 (Fla. 4th DCA 1993). Therefore, standing — a forward-looking concept — cannot “disappear” based on the ultimate outcome of the proceeding.
 
 See Hamilton County Bd. of County Comm’rs v. State, Dep’t of Envtl. Regulation,
 
 587 So.2d 1378, 1383 (Fla. 1st DCA 1991) (rejecting the Department’s argument that standing had “ceased to exist” based on amendments to the permit application proposed during the hearing and incorporated into the final permit).
 

 As all of the parties admit, chapter 120 does not actually employ the word “standing,” but the statutory test used is substantially its equivalent. Under the statutory language, a hearing is provided pursuant to section 120.569(1) “in all proceedings in which the substantial interests of a party are determined by an agency.” Thus the concept of “standing” in an administrative proceeding depends on whether the particular entity at issue qualifies as a “party.” Section 120.52(12)(b) defines a “party” as “[a]ny other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action. ...”
 

 Here, the undisputed record evidence shows that the Authority is a regional water supply authority that supplies potable water to the residents of four counties. The Peace River is the Authority’s sole source of water. Horse Creek is a tributary of the Peace River, and Horse Creek supplies approximately fifteen percent of the fresh water to the portion of the Peace River from which the Authority withdraws water. The Authority has a water use permit (WUP) from the Southwest Florida Water Management District that both gives the Authority the right to withdraw water from the Peace River and sets conditions on those withdrawals. Thus, as an entity possessed of a legal right to withdraw water from the Peace River, the Authority inarguably has a substantial interest in the river’s environmental integrity, and this interest could be injured by changes in the flow of Horse Creek into the Peace River.
 
 See Royal Palm Square Ass’n v. Sevco Land Corp.,
 
 623 So.2d 533, 535 (Fla. 2d DCA 1993) (holding that a property owner who had the right to drain water into a specific lake had a substantial interest in that lake’s environmental integrity and thus had a substantial interest in a permit that could alter the drainage into that lake).
 

 Further, the potential injury asserted by the Authority is of a type or nature that the administrative proceeding at issue is designed to protect. Chapter 373 deals
 
 *1084
 
 with the protection and conservation of the water resources of this State. The purpose and scope of the administrative proceeding at issue were to ensure that IMC’s proposed activities would not adversely affect the existing water resources or that any adverse effects would be sufficiently mitigated. Thus the interests asserted by the Authority fall squarely within the scope and purpose of the interests that chapter 373 is designed to protect. Accordingly, the Authority was properly a “party” under section 120.52(10) and therefore had “standing” in this proceeding, and the ALJ and DEP erred in ultimately finding otherwise.
 

 In this appeal, IMC argues that while the Authority properly alleged standing, it “failed in its proof.” IMC contends that because the ALJ and DEP found that there would be no adverse impacts to Horse Creek
 
 from
 
 the
 
 mining
 
 activities, the Authority failed to establish that its substantial interests would be affected. However, IMC misunderstands the issue to which the proof is directed.
 

 IMC is correct that if standing is challenged during an administrative hearing, the petitioner must offer evidence to prove that its substantial rights could be affected by the agency’s action.
 
 See Agrico,
 
 406 So.2d at 482. However, the proof required is proof of the elements of
 
 standing,
 
 not proof directed to the elements of the case or to the ultimate merits of the case. Here, the Authority offered unrebutted evidence that it had a substantial interest in the flow of Horse Creek and the Peace River and that this interest
 
 could
 
 reasonably be affected by IMC’s proposed activities. Thus the Authority established its standing by competent, substantial evidence. The fact that the ALJ and DEP ultimately found that IMC’s activities would not adversely affect the Peace River does not retroactively eliminate the Authority’s standing to prosecute the action.
 
 See Reily Enters., LLC,
 
 990 So.2d at 1251 (rejecting attempt to inject factual issues relating to the merits into the consideration of standing because doing so “would confuse standing and the merits such that a party would always be required to prevail on the merits to have had standing”).
 

 IMC also argues that the Authority lacked standing because it could not show that its substantial interests might
 
 reasonably
 
 be affected by IMC’s activities along Horse Creek because the measuring gauge that determines the Authority’s right to draw water from the Peace River is upstream from the confluence of Horse Creek and the Peace River. However, this argument ignores the fact that the Authority actually withdraws water from the Peace River downstream from Horse Creek. Thus, while the Authority’s
 
 right
 
 to draw water may not depend on the health of Horse Creek, the Authority presented unrebutted evidence that its
 
 ability
 
 to draw water may well depend on that.
 
 [3]
 
 In addition, the Authority presented unre-butted evidence that the terms of its WUP require it to monitor the health of the Peace River downstream from its confluence with Horse Creek and that changes
 
 *1085
 
 in the Peace River’s downstream health could affect the Authority’s right to withdraw water under its WUP. In light of this unrebutted evidence, IMC’s argument about the location of the measuring station has no merit.
 

 The cases cited by IMC in support of its position that the Authority has no standing are easily distinguishable. In
 
 Florida Chapter of the Sierra Club v. Suwannee American Cement Co.,
 
 802 So.2d 520, 522 (Fla. 1st DCA 2001), the court found no standing because the Sierra Club did not allege a specific injury to its rights but only a generalized interest in preventing harm to the environment. In
 
 Agrico,
 
 the court found no standing because the alleged harm to the petitioners’ economic interests was not the type of harm that chapters 373 and 403 were designed to protect.
 
 Agrico,
 
 406 So.2d at 482. In
 
 Grand Dunes, Ltd. v. Walton County,
 
 714 So.2d 473, 474-75 (Fla. 1st DCA 1998), the court found no standing because the statute under which the parties were proceeding limited standing to owners, developers, and the state land planning agency and Grand Dunes was none of these. Finally,
 
 Legal Environmental Assistance Foundation, Inc. v. Clark,
 
 668 So.2d 982 (Fla.1996), dealt with standing in the rulemak-ing context rather than the permitting process.
 

 Here, unlike in those cases, the Authority has alleged specific injuries to its own rights, and those injuries are exactly the type of injuries intended to be addressed in the administrative proceeding at issue. Thus the Authority properly established standing before the ALJ, and the ALJ’s finding to the contrary, which was adopted by DEP, is erroneous. This error is not moot because the standing issue is raised by IMC in every administrative proceeding; however, no remand is necessary in this case because the ALJ permitted the Authority to fully participate in the proceedings below.
 

 Standing on Appeal
 

 In addition to challenging the Authority’s standing at the administrative hearing, IMC also challenges the Authority’s standing to prosecute this appeal, arguing that the Authority has no standing to appeal because it was not “advei'sely affected” by DEP’s actions. IMC correctly points out that section 120.68(1) permits judicial review only to “[a] party who is adversely affected by final agency action.” However, IMC’s argument that the Authority was not “adversely affected” is incorrect.
 

 As a regional water authority, the Authority has the statutory responsibility “to meet the water needs of rapidly urbanizing areas in a manner which will supply adequate and dependable supplies of water where needed without resulting in adverse effects upon the areas from whence such water is withdrawn.” § 373.196(1). In keeping with this statutory responsibility, the Authority’s WUP imposes obligations on the Authority to monitor the environmental health of the Peace River downstream of its confluence with Horse Creek and the WUP conditions the Authority’s continued rights to withdraw water on the continuing adequate environmental health of the river. Because the permits issued by DEP allow IMC to alter the flow of Horse Creek, which may in turn alter the health of the Peace River, if those permits were improperly issued, the Authority will be adversely affected. Therefore, the Authority has standing to prosecute this appeal.
 
 See Osceola County v. St. Johns River Water Mgmt. Dist.,
 
 486 So.2d 616, 617 (Fla. 5th DCA 1986) (finding standing for a county’s appeal based on the statutory duties and responsibilities concerning the water supply imposed under section 373.196).
 

 
 *1086
 
 In the alternative, IMC argues that the Authority cannot bring this appeal because the ALJ and DEP concluded that IMC’s mining activities would not have any adverse effects on the Peace River. Thus, according to IMC, the Authority was not “adversely affected” by the agency action. However, interpreting section 120.68(1) in this manner would result in a situation in which a party who unsuccessfully challenged a permit application under section 373.414 could never appeal a final order issued by DEP because the permit cannot issue if there are adverse effects that are not mitigated. Because the Authority presented evidence that supported its position that it would be adversely affected
 
 if
 
 the permit was issued, the determination of whether those permits were properly issued necessarily includes appellate review. Thus, on these facts, the Authority has standing to appeal the ALJ’s and DEP’s rejections of its evidence, and its standing continues until the appellate process is tapped out.
 

 Cumulative Impacts Evidence
 

 Turning to the substantive issue, the Authority contends that the ALJ and DEP erred by refusing to consider its proffered evidence concerning the cumulative impacts of phosphate mining on Horse Creek and the Peace River. The Authority contends that the ALJ was required to consider this evidence pursuant to section 373.414(8)(a). DEP contends that the ALJ was not required to consider such evidence because the project fell within the “exception” to section 373.414(8)(a) found in section 373.414(8)(b). Given the factual findings of the ALJ in this case, we are constrained to agree with DEP.
 

 Section 373.414(8)(a) requires DEP to consider the cumulative impact of regulated activities that will occur in wetlands when determining whether to issue a permit for mining activities. However, section 373.414(8)(b) limits the circumstances under which section 373.414(8)(a) applies. Section 373.414(8)(b) provides:
 

 If an applicant proposes mitigation within the same drainage basin as the adverse impacts to be mitigated, and
 
 if the mitigation offsets these adverse impacts,
 
 the governing board and department shall consider the regulated activity to meet the cumulative impact requirements of paragraph (a).
 

 (Emphasis added.) Under the plain language
 
 of
 
 section 373.414(8)(b), DEP must consider evidence of cumulative impacts
 
 either
 
 when the proposed mitigation is not in the same drainage basin as the adverse impacts
 
 or
 
 when the proposed mitigation does not offset the adverse impacts. If the proposed mitigation is in the same drainage basin and if the proposed mitigation offsets the adverse impacts, the cumulative impacts test is deemed satisfied as a matter of law and DEP need not consider any evidence of cumulative impacts.
 

 Here, the parties do not dispute that IMC’s proposed mitigation is in the same drainage basin as the regulated activity. The only question is whether the proposed mitigation offsets the adverse impacts of IMC’s activities. The ALJ specifically found based on the testimony of IMC’s experts that IMC’s activities would not result in any adverse impacts postmitigation, and DEP adopted this finding. To the extent that this finding constitutes a factual finding that no adverse impacts will remain postmitigation, it is supported by competent, substantial evidence in the record. To the extent that DEP has found IMC’s mitigation efforts sufficient to support the issuance of the permit based on the factual finding that no adverse impacts will remain postmitigation, DEP has properly exercised its statutory discretion under section 373.414(l)(b) to determine whether the proposed mitigation is suffi-
 
 *1087
 
 dent.
 
 See 1800 Atl. Developers v. Dep’t of Envtl. Regulation, 552
 
 So.2d 946, 955 (Fla. 1st DCA 1989) (analyzing the statutory predecessor to section 373.414(l)(b) and holding that “[i]t is the responsibility of DER ... to establish mitigative measures acceptable to it under the statute” and “to define mitigative measures that would be sufficient to offset the perceived adverse effects of the dredging and filling contemplated by the project”);
 
 see also Save Anna Maria, Inc. v. Dep’t of Transp.,
 
 700 So.2d 113, 116 (Fla. 2d DCA 1997) (“The DEP has the exclusive final authority to determine the sufficiency of the proposed ... mitigation.”). In either event, this court may not substitute its judgment for that of the ALJ or DEP on this issue.
 

 In this appeal, the Authority argues that section 373.414(8)(b) should be interpreted to mean that the mitigation must “fully offset” the adverse impacts created by IMC’s mining activities and that IMC did not establish that its proposed mitigation would fully offset the adverse impacts. This argument fails for two reasons.
 

 First, this court is not permitted to add words to a statute that were not placed there by the legislature.
 
 See Hayes v. State,
 
 750 So.2d 1, 4 (Fla.1999) (“We are not at liberty to add words to statutes that were not placed there by the Legislature.”);
 
 see also Bay Holdings, Inc. v. 2000 Island Boulevard Condo. Ass’n,
 
 895 So.2d 1197, 1197 (Fla. 3d DCA 2005). To do so would be an abrogation of legislative power.
 
 Donato v. Am. Tel. & Tel. Co.,
 
 767 So.2d 1146, 1150-51 (Fla.2000);
 
 Holly v.
 
 Auld, 450 So.2d 217, 219 (Fla.1984) (holding that courts are “without power to construe an unambiguous statute in a way which would extend, modify, or limit its express terms”) (emphasis omitted) (quoting
 
 Am. Bankers Life Assurance Co. of Fla. v. Williams,
 
 212 So.2d 777, 778 (Fla. 1st DCA 1968)). While the Authority cites to legislative history that seems to indicate that the legislature’s intent was to require the mitigation to “fully offset” the adverse impacts, the statute as enacted does not contain that language, and this court cannot rewrite the statute to say so.
 
 See State v. Jett,
 
 626 So.2d 691, 693 (Fla.1993) (“It is a settled rule of statutory construction that unambiguous language is not subject to judicial construction, however wise it may seem to alter the plain language.”);
 
 Ervin v. Collins,
 
 85 So.2d 852, 855 (Fla.1956) (holding that the court is not permitted to revise an unambiguous statute by “engrafting ... our views as to how it should have been written”). Ironically the statute itself, as written, encourages applicants to engineer their projects in an incremental fashion in order to streamline the time-consuming, costly-review process which then avoids the cumulative impacts provision. However, as noted, the rule of law prevents us from thwarting this methodology.
 

 Second, even if we were to interpret the statute as suggested by the Authority, we would nevertheless be compelled to affirm. Section 373.414 does not require a permit applicant to mitigate every potential impact to waters, wetlands, and wildlife — it must only mitigate
 
 adverse
 
 impacts. Moreover, the focus of wetlands reclamation activities after phosphate mining must be on whether those activities “maintain or improve the water quality and the function of the biological systems present at the site prior to the commencement of mining activities.” § 373.414(6)(b). Here, the ALJ found, based on competent, substantial evidence, that there would be
 
 no
 
 postmitigation adverse impacts from IMC’s activities on either water quality or the function of the biological systems at issue, and DEP adopted this finding. Thus DEP implicitly ruled that IMC’s proposed mitigation “fully” offset the adverse impacts of its pro
 
 *1088
 
 posed activities. Therefore, even under the Authority’s rewritten version of the statute, IMC was not required to present evidence of cumulative impacts.
 

 It appears that the Authority’s real argument on this issue is that the ALJ’s finding of no adverse impacts was not supported by the evidence presented by IMC. The Authority points to testimony and evidence that established that the streamflow in Horse Creek would be reduced both during mining and after reclamation. However, there was also clear testimony that these reduced streamflows would be so small that they would not be adverse to the waters, wetlands, and wildlife at issue. The ALJ credited this testimony rather than the contrary evidence presented by the Authority, and this testimony supported the ALJ’s finding that the “function of the biological systems” would be fully restored. We have meticulously examined the voluminous record on appeal, and we have determined that there is ample evidence and counter-evidence on this issue that could have supported a ruling either way. Because it is solely the province of the ALJ to make credibility determinations and resolve issues of fact based on those determinations, we must defer to this factual finding.
 

 Also, contrary to the Authority’s arguments in this appeal, this result does not create a “de minimis” exception to the cumulative impact rule in contravention of
 
 Florida Power Corp. v. State, Department of Environmental Regulation,
 
 638 So.2d 545, 561 (Fla. 1st DCA 1994). In that case, the ALJ did
 
 not
 
 find that there were
 
 no
 
 adverse impacts from Florida Power’s actions.
 
 Id.
 
 Instead, the ALJ there found that there
 
 were
 
 unmitigated adverse impacts but that they were minimal in light of the scope of the entire project.
 
 Id.
 
 DEP subsequently denied the permit based on these remaining unmitigated adverse impacts, concluding that there was no exception to the cumulative impacts test for de minimis adverse impacts.
 
 Id.
 
 The First District agreed with DEP that no “de minimis” exception to the cumulative impacts test exists, and thus it affirmed the permit denial.
 
 Id.
 
 Here, however, the ALJ specifically found that there were
 
 no
 
 unmitigated adverse impacts from IMC’s proposed activities. Because there simply are no adverse impacts being exempted from consideration in this case, there is no “de minimis” exception being applied.
 

 In the absence of a finding that IMC’s activities would result in some unmitigated adverse impacts, IMC was not required to put forth, nor was DEP required to consider, evidence of cumulative impacts under section 373.414(8)(b). As a result, the ALJ did not err in excluding the Authority’s proffered evidence of cumulative impacts, nor did DEP err in refusing to consider the Peace River Cumulative Impacts Study.
 

 That said, however, we agree with the Authority and the Fifth District in
 
 Sierra Club v. St. Johns River Water Management District,
 
 816 So.2d 687, 692 (Fla. 5th DCA 2002), that the exception set forth in section 373.414(8)(b) essentially eviscerates the cumulative impacts assessment provided for by section 373.414(8)(a). There is no question that IMC’s activities, postmiti-gation, will result in a slightly reduced streamflow in Horse Creek. That reduced streamflow, standing alone, may not be an “adverse impact.” However, if every project in the Horse Creek basin results in a slightly reduced streamflow, the cumulative impact of those projects will, at some point, become adverse. Despite this, section 373.414(8)(b) permits the DEP to examine each project’s impacts in isolation. So long as permit applicants propose mitigation in the same basin and so long as the incremental impact of each of those pro
 
 *1089
 
 jects is so small that the impact can individually be classified as not adverse, DEP never has to engage in a cumulative impacts analysis, regardless of the fact that each of these incremental impacts may be adding up to ultimately have a significant adverse impact across the basin as a whole. Thus, despite the legislature’s apparent intent to force DEP to consider the cumulative impacts of multiple projects when making permitting decisions, the actual legislation does not effectuate this intent. Nonetheless, despite our misgivings, we cannot rewrite section 873.414(8) or overrule DEP’s discretionary determinations to prevent this bit-by-bit accumulation of adverse impacts. That task must be left to the legislature.
 

 In addition, we recognize that protecting the environment is always a laudable goal, and had we been sitting as the trier of fact, our findings of fact might have been different from those ultimately made by the ALJ and adopted by DEP. However, the legislature has stated that “[t]he extraction of phosphate is important to the continued economic well-being of the state and to the needs of society.” § 378.202(1), Fla. Stat. (2004). In an effort to balance the competing interests of the mining industry and the environment, the legislature has encouraged DEP to work with phosphate companies to develop viable plans to mine the phosphate and then reclaim those lands postmining. It is not within our province to challenge the priorities set by the legislature or to judicially amend the statutes adopted by it in furtherance of those priorities. Therefore, given the plain language of section 373.414(8)(b) and the findings of fact made by the ALJ and adopted by DEP, we are compelled to affirm on this issue.
 

 Conclusion
 

 In conclusion, we hold that the Authority had standing to challenge IMC’s permit application before the ALJ and DEP and that it had standing to appeal the final order that granted that application. However, because the Authority was allowed to fully participate in all the proceedings, we need not reverse on that basis. On the substantive grounds raised by the Authority, we affirm.
 

 Affirmed.
 

 STRINGER and DAVIS, JJ„ Concur.
 

 [1]
 

 . Hardee County also initially challenged the issuance of the permits; however, it dropped its opposition before the administrative hearing.
 

 [2]
 

 . Ordinarily, standing is a threshold issue that should be disposed of before addressing the merits of the case. However, we can appreci-ale that in this instance the facts related to the merits needed to be developed to a certain degree before standing could be adequately addressed. Thus it appears that judicial economy was served by this procedure in this case.
 

 [3]
 

 . For example, the Authority presented evidence that there are days when the flow of the Peace River at the measuring station is sufficient to give the Authority the right to withdraw water from the river but the flow at the Authority’s intake structure is insufficient to prevent brackish water from the Charlotte Harbor estuary from backing up into the river. When that occurs, the Authority does not have the ability to withdraw water, even though it may have the right to do so, because the Authority does not have the facilities necessary to treat brackish water. The Authority posited that if the flow of Horse Creek into the Peace River was reduced, the number of days when brackish water would prevent the Authority from withdrawing water would increase.