406 So.2d 478 (1981)
AGRICO CHEMICAL COMPANY, Appellant,
v.
DEPARTMENT OF ENVIRONMENTAL REGULATION, Freeport Sulphur Company (a Division of Freeport Minerals Company) and Sulphur Terminals Company, Inc., Appellees.
No. 79-2029.
District Court of Appeal of Florida, Second District.
October 7, 1981.
Rehearing Denied December 4, 1981.
Edward P. de la Parte, Jr. and Louis de la Parte, Jr., of de la Parte & Butler, Tampa, and John T. Allen, Jr., St. Petersburg, for appellant.
John C. Bottcher and Mary F. Clark, Dept. of Environmental Regulation, Tallahassee, for appellee, Department of Environmental Regulation.
William L. Earl, Paul H. Amundsen and Richard M. Goldstein of Peeples, Earl, Smith, Moore & Blank, P.A., Miami, for appellees, Freeport Sulphur Co. and Sulphur Terminals Co., Inc.
*479 HOBSON, Acting Chief Judge.
Petitioner Agrico Chemical Company (Agrico) seeks review of a final order of the Florida Environmental Regulation Commission (Commission) which affirmed an order of the Florida Department of Environmental Regulation (DER) denying Agrico a construction permit for solid sulphur-handling facilities. We reverse on the ground that Agrico's business competitors were erroneously granted standing to interfere in DER's permitting procedure.
Agrico mines phosphate and manufactures fertilizer in Florida. Sulphur constitutes approximately fifty per cent of the cost of making fertilizer. Agrico purchases molten sulphur from Freeport Sulphur Company (Freeport), a division of Freeport Minerals Company, Inc. Because of Florida's large phosphate industry, Tampa is the largest single sulphur market in the world. Freeport delivered over one million tons of sulphur to the Tampa market in 1978. Sulphur Terminals Company, Inc. (Sulphur Terminals) handles liquid sulphur at its Tampa facility.
Since the early 1960's, sulphur has been delivered through the Port of Tampa in a molten state. This necessitates maintaining the sulphur at high temperatures from production until sale and conversion into sulphuric acid. Recently a new, less expensive, type of sulphur became available from a Canadian supplier. This form of sulphur is referred to as "prill" and is maintained in a solid, pellet form. Prill is cheaper than molten sulphur because it is produced, transported and maintained in a solid state which avoids the cost of keeping and transporting molten sulphur. The air pollution potential from prill is controlled by moisture. During off-loading at dockside, the prill is sprayed with water to prevent dusting.
Agrico initiated this proceeding by filing an application with DER pursuant to section 403.087, Florida Statutes (1977), for a construction permit to construct a terminal facility in Tampa to handle prill sulphur. Since the proposed terminal facility would constitute a potential pollution source under section 403.087, Agrico was required to comply with the procedure in chapter 17-4, Florida Administrative Code, which requires an applicant first to obtain a construction permit and then, after testing for compliance with pollution standards, an operation permit. Agrico applied for two construction permits, one for an air pollution source and one for a waste-water facility. DER issued the waste-water permit and a letter of intent to grant the air permit. Freeport and Sulphur Terminals filed petitions objecting to the issuance of Agrico's permits. Standing to contest these permits was alleged on the basis of economic injury to petitioners.
DER transferred Freeport and Sulphur Terminals' petitions to the Division of Administrative Hearings (DOAH) for hearing. The hearing officer recommended that DER and Agrico's motions to dismiss the petitions challenging the water permit be granted, because DER had already issued the water permit. DER reviewed the hearing officer's recommended order and determined that the legal issue to be resolved was whether Freeport and Sulphur Terminals had alleged grounds for standing as parties to a section 120.57 formal hearing. In making its final determination, DER took official recognition, pursuant to section 120.61, Florida Statutes, of Agrico's air permit application case. Both the air and water permit cases were presided over by the same DOAH officer and included the same parties represented by the same attorneys. This action by DER allowed it to consider exhibits filed in the air permit case in order to make a determination in the water permit case.
In its findings on the water permit, DER stated that Freeport and Sulphur Terminals' generalized claims of environmental pollution were not sufficient to establish standing since Freeport had established no nexus between Agrico's proposed waste-water treatment system and harm to Freeport's legitimate environmental interests. DER concluded that the nature of Freeport's "substantial interest" was future adverse economic impact. These economic *480 concerns were held not to be within the zone of interest protected by the environmental licensing provisions of chapter 403, Florida Statutes. DER's final order modified the hearing officer's recommended order and granted Agrico's motion to dismiss the petition on the ground of lack of standing. The order confirmed the prior issuance of Agrico's water permit.
After dismissal of their petition objecting to the water permit, Freeport and Sulphur Terminals amended their petition as to the air permit and alleged environmental injury which would result from Agrico's proposed solid sulphur facility.
The hearing officer subsequently granted standing to Freeport and Sulphur Terminals in the air permit case on three grounds: 1) Freeport and Sulphur Terminals' substantial interests [adverse economic impact] were affected; 2) DER's act of forwarding the petitions to DOAH for hearing "allowed" Freeport and Sulphur Terminals to intervene pursuant to the definition of "party" under section 120.52(10)(c); and 3) Florida Administrative Code Rule 17-2.03, the LRACT Rule,[1] entitled Freeport and *481 Sulphur Terminals to participate as parties pursuant to section 120.52(10)(b). The order recommended denial of the air permit.[2]
DER adopted the hearing officer's recommendation that the air permit be denied and affirmed Freeport and Sulphur Terminals' standing solely on the basis of rule 17-2.03, the LRACT Rule. DER specifically rejected the first two grounds set out by the hearing officer. The Commission of Environmental Regulation affirmed the final order.

PARTIES' POSITIONS
Agrico contends, among other things, that Freeport and Sulphur Terminals do not have standing to contest its air pollution permit application because competitive economic injury alone is insufficient to afford standing to request a section 120.57 formal hearing under the Florida Administrative Procedure Act. Agrico argues that there is no statutory authority for making competitive economic injury a concern in the issuance of permits under chapter 403.
DER's position, as stated in its final order, is that, while competitive economic injury is not sufficient to confer standing to seek a section 120.57 hearing in a chapter 403 permitting procedure, the LRACT Rule makes competitive economic injury a matter of agency concern and confers standing on Freeport and Sulphur Terminals pursuant to section 120.52(10)(b), Florida Statutes. DER claims the right to grant standing to economic competitors if it chooses to do so, even though its final decision to issue or deny a permit may not be based on the economic effect on an applicant's competitor.
Freeport and Sulphur Terminals cross-appeal the narrow ground on which they were granted standing and contend that they have party status without regard to the provisions of the LRACT Rule. They argue that under section 120.52(10)(b) any person whose "substantial interest" will be affected by a proposed agency action is a "party." As regulated members of the Florida sulphur industry, Freeport and Sulphur Terminals claim standing as parties in any DER proceedings concerning changes in pollution control technology. Since the Administrative Procedure Act allows a regulated industry to initiate rule-making proceedings, Freeport and Sulphur Terminals argue that they have access, as parties, to any proceeding where emerging policy is formulated which will substantially affect their economic interest.

DISCUSSION
We hold that the Commission was in error when it affirmed DER's order granting standing to Freeport and Sulphur Terminals and allowing them, as economic competitors, to participate in Agrico's chapter 403 permitting process.[3]
The portion of the Administrative Procedure Act defining "party" which is applicable to this appeal reads as follows:
(10) `Party' means:

*482 ... .
(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
We agree with DER that the statute itself did not give the petitioners standing because they were unable to show that their environmental interests were substantially affected by the agency question. See Florida Department of Offender Rehabilitation v. Jerry, 353 So.2d 1230 (Fla. 1st DCA 1978). We believe that before one can be considered to have a substantial interest in the outcome of the proceeding he must show 1) that he will suffer injury in fact which is of sufficient immediacy to entitle him to a section 120.57 hearing, and 2) that his substantial injury is of a type or nature which the proceeding is designed to protect. The first aspect of the test deals with the degree of injury. The second deals with the nature of the injury. While petitioners in the instant case were able to show a high degree of potential economic injury, they were wholly unable to show that the nature of the injury was one under the protection of chapter 403.
Chapter 403 simply was not meant to redress or prevent injuries to a competitor's profit and loss statement. Third-party protestants in a chapter 403 permitting procedure who seek standing must frame their petition for a section 120.57 formal hearing in terms which clearly show injury in fact to interests protected by chapter 403. If their standing is challenged in that hearing by the permit applicant and the protestants are then unable to produce evidence to show that their substantial environmental interests will be affected by the permit grant, the agency must deny standing and proceed on the permit directly with the applicant.
DER granted party status to petitioners on the premise that one of its regulations "by reasonable inference" made potential competitive injury to petitioners a proper matter of concern in the agency action on Agrico's application for a construction permit. DER's final order, as approved by the Commission, stated:
[A]n agency may make potential competitive economic injury cognizable in its licensing proceedings. In this instance, the Department has done so.
In its licensing decision in this case, the Department was required to determine and apply the Latest Reasonably Available Control Technology ("LRACT"). Section 17-2.03(1)(A), Florida Administrative Code, provides, in pertinent part, as follows:
(A) Determination  the Department shall determine Latest Reasonably Available Control Technology.
(1) In making the determination the Department shall give due consideration to:
a... .
b... .
c... .
d. the social and economic impact of the application of technology...

`Economic impact' is broad enough to reasonably include consideration of the potential economic impacts application of LRACT would have on competitors of the applicant.
We are not persuaded that the reference in section 17-2.03(1)(A) to "social and economic impact" can be reasonably read to include the economic impact on a business entity when a competitor is first on the market with a less expensive product. The LRACT Rule, read in the context of DER's statutory framework, chapter 403, is clearly concerned with the economic effect of the application of new environmental technology on businesses which are or will be required to conform their technology to current standards. Subsection (1)(d) is a cost/benefit test; cost to the affected business as opposed to the benefit to environmental interests served by the new technology. This provision does not require DER to balance the cost of new technology to the affected business against possible economic *483 losses to a business competitor. Thus, the LRACT Rule is not a "provision of agency regulation" which allows a competitor to object, solely on the basis of potential competitive economic injury, to the issuance of the permit under chapter 403.
In the instant case, DER had already reviewed Agrico's application, found it to be adequate, and issued a letter of intent to grant the construction permit. We, therefore, grant Agrico's petition for review, vacate the final order of the Commission, and direct DER to proceed with the issuance of the subject construction permit. We note that Agrico's sulphur-handling facility, when and if constructed, will then be subject to rigorous testing before the operational permit can be issued.
Since the issue of standing is dispositive of this appeal,[4] we do not address Agrico's remaining arguments.
REVERSED.
GRIMES and RYDER, JJ., concur.
NOTES
[1] The applicable provision of Fla. Admin. Code Rule 17-2.03, known as the LRACT Rule, reads in part, as follows:

(1) Latest Reasonably Available Control Technology.
(A) Determination  The Department shall determine Latest Reasonably Available Control Technology.
(1) In making the determination the Department shall give due consideration to:
a. Environmental Protection Agency Determinations of Reasonably Available Control Technology pursuant to 40 C.F.R. Section 51.1(0) and 40 C.F.R., Part 51, Appendix B; and Environmental Protection Agency determinations of Standards of Performance for New Stationary Sources, pursuant to 40 C.F.R., Part 60.
b. All scientific, engineering, and technical material, reports, publications, journals, and other competent relevant information made available to or known by the Department.
c. Recommendations of any ad hoc technical advisory committee appointed pursuant to paragraph 3 of this subsection (17-2.03(1)(a)).
d. The social and economic impact of the application of such technology including consideration of any useful life of presently installed control equipment and the amortization of the value of such equipment balanced with the cost and advantages of the new technology; public interest served by such equipment; and other appropriate factors, such as materials, manufacturing processes, all environmental impacts, control and treatment technology available, ability to construct, install, and operate the facility, energy requirements, and cost.
(2) The Department shall specify and publish its determination of Latest Reasonably Available Control Technology by source or category of sources.
(3) To assist the Department in making the determination of Latest Reasonably Available Control Technology, the Executive Director may appoint an ad hoc technical advisory committee of persons with expertise and knowledge in the particular matter under consideration. The committee shall be representative of scientific, affected industry, citizen and conservation interests. If an affected party so requests the committee shall be appointed.
(4) Any citizen or affected party may, in accordance with the Florida Administrative Procedures Act, Chapter 120, Florida Statutes, request a determination of Latest Reasonably Available Control Technology for a source or category of sources.
(5) The determination of Latest Reasonably Available Control Technology shall be made by the Board only after notice and public hearing is requested by an affected party.
(6) Determinations of Latest Reasonably Available Control Technology shall be periodically reviewed by the Department, and shall be subject to revision in accordance with this Section 17-2.03(1), Florida Administrative Code, subsequent to such review if the Board determines, on the basis of competent substantial evidence, that different equipment, devices or processes will result in a reduction of emissions.
(B) Application
(1) If the application of the Latest Reasonably Available Control Technology to an air pollutant source will result in lower or improved air pollutant emissions, then the Department shall require that the Latest Reasonably Available Control Technology be applied. (emphasis ours)
The LRACT Rule was repealed prior to final hearing in the instant case and replaced by Fla. Admin. Code Rule 17-2.03, entitled "Best Available Control Technology" (BACT). The BACT Rule states in subsection 3(b):
Any pending petition or proceeding involving a determination of latest reasonably available control technology (LRACT) in process on the effective date of this subsection and any construction permit application or construction permit proceeding affected by such LRACT determination, petition or proceeding or relating to a category of sources encompassed by such proceeding shall be governed by the provisions of the LRACT rule... .
Agrico's air permit proceeding, was therefore, affected by standards determined under the guidelines of the LRACT Rule. The difficulty in applying this rule to Agrico's permit application is that DER has never determined LRACT for sulphur-handling facilities.
[2] The hearing officer conducted what the parties refer to as a "mini-trial" on the standing issue before taking testimony on the substantive technical issues.
[3] The fact that DER recognized the error of granting standing on two of the three grounds stated by the hearing officer did not rectify the situation. The § 120.57 hearing should have terminated when the hearing officer became aware that Freeport and Sulphur Terminals could put forth no evidence that they would be injured environmentally from Agrico's solid sulphur facility. The strongest environmental allegation contained in the petition was that solid sulphur was "environmentally regressive." From that point on, environmental matters were relegated to the rear echelons of the "standing" battle. After the "mini-trial" on standing, the substantive portion of the hearing became a veritable maze of conflicting technical evidence which the hearing officer was required to resolve within the framework of nonexistent LRACT criteria for sulphur-handling facilities.
[4] The petitioners did not seek to intervene under section 403.412(5) nor comply with its requirements, so we need not consider its applicability to this case.