948 So.2d 794 (2006)
MID-CHATTAHOOCHEE RIVER USERS, Appellant,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellee.
No. 1D06-0371.
District Court of Appeal of Florida, First District.
November 22, 2006.
Rehearing Denied February 16, 2007.
*795 Jeffrey H. Wood of Balch & Bingham, LLP, Birmingham, Alabama, for Appellant.
Gregory M. Munson, General Counsel, and Teresa L. Mussetto, Senior Assistant General Counsel, Tallahassee, for Appellee.
LEWIS, J.
Appellant, Mid-Chattahoochee River Users, an unincorporated multi-state association whose members are public and private corporations and associations in Georgia and Alabama, seeks review of the Final Order of Dismissal with Prejudice ("Final Order") that was entered by appellee, the Florida Department of Environmental Protection ("Department"), in response to appellant's Amended Petition for Administrative Hearing ("amended petition"). Appellant raises four issues on appeal, only one of which merits discussion. Appellant contends that the Department erred in determining that it lacked standing to request an administrative hearing after the Department denied a permit application filed by the U.S. Army Corps of Engineers ("Corps"). We disagree and, therefore, affirm the Final Order.
As explained in the Department's notice of denial, the Corps applied for a "wetland resource permit/water quality certification and authorization to use sovereign submerged lands . . . to maintenance dredge the Apalachicola River navigation channel . . . and place the dredged material in disposal sites located within the floodplain *796 or banks of the Apalachicola River." The Department further explained that it had previously issued five-year duration permits for maintenance of the Apalachicola River navigation channel. However, monitoring efforts found that the disposal practices caused adverse environmental impacts to aquatic habitats, fishery resources, sloughs, and floodplains as well as possible secondary alteration of river stability. The Department noted that the Corps' compliance with the conditions of previous permits had been problematic and that the Corps had not provided the necessary reasonable assurances with respect to the permit application at issue.
Appellant subsequently filed the amended petition, requesting an administrative hearing and alleging that if the Corps' permit was not issued, its members would suffer immediate harm from the inability to navigate down the Apalachicola River.[1] According to appellant, one of its members, Southern Nuclear Operating Company, intended to ship extremely large pieces of industrial equipment using the Apalachicola River navigation channel in early 2006 as part of a $360,000,000 replacement project at one of its power plants. The ability to move large pieces of equipment to and from a certain part of Alabama was also important to another of appellant's members, Mead-Westvaco Corporation. Appellant explained that the navigability of the Apalachicola River for shipping provides a basis to negotiate more favorable terms and conditions for other modes of transportation, such as rail and trucking. Georgia Pacific, another member, would allegedly be affected by the notice of denial because it operated a liner board/corrugating medium mill on the east bank of the Chattahoochee River and because the viability of navigation and the transportation of its materials on the Apalachicola River provided potential cost savings to the plant and provided beneficial pressure on other modes of transportation. Appellant further alleged that it desired to "champion equitable, optimal use and good stewardship of the water resources" in the river basin and to "enhance the quality of life in its members' communities through watershed planning."
In the Final Order, the Department addressed its jurisdiction to consider the amended petition and appellant's standing. With respect to standing, the Department determined that appellant lacked such because appellant's members' economic injury was not within the zone of interest to be protected under the pertinent regulatory scheme. This appeal followed.
Whether a party has standing to bring an action is a question of law that is to be reviewed de novo. Hospice of Palm Beach County, Inc. v. State, Agency for Health Care Admin., 876 So.2d 4, 7 (Fla. 1st DCA 2004). In determining whether a party has standing to seek a formal administrative hearing, the allegations contained in the party's petition must be taken as true. Id. Section 120.569(1), Florida Statutes (2005), provides that the provisions of the section, which pertain to administrative hearings, apply to "all proceedings in which the substantial interests of a party are determined by an agency. . . ." Section 120.52, Florida Statutes (2005), sets forth in part:
(12) "Party" means:
(a) Specifically named persons whose substantial interests are being determined in the proceeding.
(b) Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part *797 in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.
(c) Any other person, including an agency staff member, allowed by the agency to intervene or participate in the proceeding as a party. An agency may by rule authorize limited forms of participation in agency proceedings for persons who are not eligible to become parties.
(Emphasis added). In order to satisfy the substantial interests test, it must be shown that: (1) the petitioner will suffer injury in fact that is of sufficient immediacy to entitle him or her to a section 120.57 hearing and (2) that his or her substantial injury is of a type or nature that the proceeding is designed to protect. Agrico Chem. Co. v. Dep't of Envtl. Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981). The first element pertains to the degree of injury whereas the second deals with the nature of the injury. Id. The intent of Agrico was to preclude parties from intervening in a proceeding where those parties' substantial interests are totally unrelated to the issues that are to be resolved in the administrative proceedings. Gregory v. Indian River County, 610 So.2d 547, 554 (Fla. 1st DCA 1992).
Because the Department focused on the second prong of the Agrico test in denying appellant's amended petition, we will do the same. Chapter 373, Florida Statutes, entitled "Water Resources," is composed of six parts. One of the ten policies listed with respect to water sets forth that it is the policy of the Legislature "[t]o promote recreational development, protect public lands, and assist in maintaining the navigability of rivers and harbors." § 373.016(3)(i), Fla. Stat. (2005). Section 373.414(1)(a), Florida Statutes (2005), provides that in determining whether a proposed activity which is in, on, or over surface waters or wetlands is in the public interest, the Department shall consider:
1. Whether the activity will adversely affect the public health, safety, or welfare or the property of others;
2. Whether the activity will adversely affect the conservation of fish and wildlife, including endangered or threatened species, or their habitats;
3. Whether the activity will adversely affect navigation or the flow of water or cause harmful erosion or shoaling;
4. Whether the activity will adversely affect the fishing or recreational values or marine productivity in the vicinity of the activity;
5. Whether the activity will be of a temporary or permanent nature;
6. Whether the activity will adversely affect or will enhance significant historical and archaeological resources under the provisions of s. 267.061; and
7. The current condition and relative value of functions being performed by areas affected by the proposed activity.
As the Department determined below, appellant's economic injury is not the type of injury that the permitting proceeding under chapter 373 was designed to protect. In City of Sunrise v. South Florida Water Management District, 615 So.2d 746, 747 (Fla. 4th DCA 1993), which also addressed permitting under chapter 373, the Fourth District noted that the appellant, which provided potable water to the area at issue, petitioned for formal proceedings after one of the appellees applied for a water use permit to obtain water from a different water source. The appellant alleged that it had standing because the proposed permit would result in duplication of facilities and service thereby increasing rates to all customers. 615 So.2d at 747. In holding *798 that the appellant failed to satisfy either Agrico element, the Fourth District noted that while the appellant might suffer losses and its customers incur expenses due to economic competition, that did not satisfy the immediacy requirement. Id. The court also noted that competitive economic considerations do not fall within the zone of protection that the South Florida Water Management District was authorized to consider under chapter 373. Id. Rather, the permitting process under that chapter contemplates addressing the problems of water supply, not economic injuries. Id. The Fourth District further noted that the appellant made no effort "to establish a substantial environmental interest that might be affected by the District granting the consumptive use permit. . . ." Id. at 748.
Similarly, in Agrico, it was held that those seeking an administrative hearing did not have standing to intervene in a permitting procedure. 406 So.2d at 478. There, the appellant applied for two construction permits, one for an air pollution source and one for a waste-water permit. Id. Two of the appellant's business competitors filed petitions objecting to the issuance of the permits. Id. Standing to contest the permits was alleged on the basis of economic injury to the competitors. Id. In reversing the order granting standing to the competitors, the Second District held that the competitors were unable to show that their environmental interests were substantially affected by the agency question. Id. at 482. The Second District noted that chapter 403, Florida Statutes, which is the chapter that governed the permitting process in the case, was not meant to redress or prevent injuries to a competitor's profit and loss statement. Id.; see also Dep't of Prof'l Regulation, Bd. of Dentistry v. Fla. Dental Hygienist Ass'n, 612 So.2d 646, 651 (Fla. 1st DCA 1993) (noting that standing in a licensure proceeding pursuant to section 120.57 may well have to be predicated on a somewhat different basis than standing in a rule challenge proceeding and that prior decisions in licensing or permitting cases have made it clear that a claim of standing by third parties based solely upon economic interests is not sufficient unless the permitting or licensing statute itself contemplates consideration of such interests).
In contrast to Agrico and City of Sunrise, in Ybor III, Ltd. v. Florida Housing Finance Corporation, 843 So.2d 344, 345 (Fla. 1st DCA 2003), we held that the appellant's interests met the second prong of the standing test. We explained that the appellee, an entrepreneurial public corporation with the Department of Community Affairs, was created "`to provide and promote the public welfare by administering the governmental function of financing . . . housing and related facilities in Florida. . . .'" 843 So.2d at 345 (citation omitted). Pursuant to chapter 420, Florida Statutes, the appellee participated in various state and federal programs that served to provide affordable and low income housing in Florida. Id. We held that the appellant, a company that sought funding from the appellee, had standing to request a formal administrative hearing to address its allegations that the appellee scored its competitor's application for funding incorrectly and that the first prong of the Agrico test had been satisfied because the appellee, by granting the appellant's competitor's application, excluded the appellant from that cycle of the funding process. Id. We further held that the appellant met the second prong of the test because its injury was of the type or nature that the proceeding was designed to protect and because common sense and logic dictated that if such a program of economic incentives was to succeed, the *799 process of determining who was qualified for loans and tax credits had to be administered fairly and honestly. Id.; see also Friends of the Everglades, Inc. v. Bd. of Trs. of the Internal Improvement Trust Fund, 595 So.2d 186, 190 (Fla. 1st DCA 1992) (noting that the nature of the proposed proceeding was to determine whether the use of the property at issue as a juvenile facility would comply with section 253.023, Florida Statutes, the Conservation and Recreation Lands statute, and that the allegations of the petition for a formal administrative hearing, which alleged that utilization of the land in that manner would immediately preclude use of the facility as a recreation area and cause environmental damage to the proposed site, were sufficient to constitute injury of the type the statute was designed to protect); Reedy Creek Improvement Dist. v. State Dep't of Envtl. Regulation, 486 So.2d 642, 649 (Fla. 1st DCA 1986) (holding that the appellant, a local pollution control program pursuant to section 403.182, Florida Statutes, had standing to seek a formal administrative hearing to contest the issuance of a construction permit that authorized a utility company to modify its sewage treatment facility which modification would discharge effluent into a manmade box cut canal portion of Bonnett Creek, because it was clear that the appellant had an interest in the water quality of Bonnet Creek and that that interest was the type of interest that chapter 403 was designed to protect).
Here, there is no question that any harm suffered by appellant's members as a result of the notice of denial would be economic in nature. Appellant essentially acknowledges such when it argues that if the notice of denial is not reversed, a substantial number of its members will be adversely affected because the Apalachicola River "will no longer be a reliable avenue for commercial navigation to the Gulf of Mexico." Unlike the situation in Ybor III, Ltd. where the harm suffered by the appellant was of the type that the proceeding at issue was designed to protect, any economic injury suffered by appellant's members as a result of the notice of denial is not of the type that chapter 373's permitting process was designed to protect. See City of Sunrise, 615 So.2d at 747. Therefore, the Department correctly determined that appellant lacked standing to seek an administrative hearing regarding the notice of denial.
Accordingly, we AFFIRM the Final Order.
WOLF and THOMAS, JJ., concur.
NOTES
[1] Notably, the Corps did not challenge the notice of denial.