# Third District Court of Appeal

## State of Florida

Opinion filed November 9, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2824
Lower Tribunal Nos. OGC 15-1621; Dep. 13-306513-006
_____

**Village of Key Biscayne, etc.,**
Appellant,

vs.

**The Department of Environmental Protection, et al.,**
Appellees.

An Appeal from the Department of Environmental Protection.

Shubin & Bass and John K. Shubin and Ian E. DeMello, for appellant.

Frederick L. Aschauer, Jr., General Counsel, and Jeffrey Brown, Deputy General Counsel, and Francine M. Ffolkes, Administrative Law Counsel (Tallahassee), for Department of Environmental Protection; Greenberg Traurig, P.A., and Elliot H. Scherker, Alan T. Dimond, Kerri L. Barsh, Brigid F. Cech Samole and Timothy A. Kolaya, for National Marine Manufacturers Association; Victoria Méndez, City Attorney, and John A. Greco, Deputy City Attorney, for the City of Miami, for appellees.

Before SUAREZ, C.J., and SHEPHERD and SCALES, JJ.

SHEPHERD, J.

This is an appeal from a final order of the Florida Department of Environmental Protection (DEP), dismissing a Petition for Administrative Hearing filed by the Village of Key Biscayne in which the Village sought to challenge DEP's issuance of a five-year environmental resource permit[1] authorizing installation by the National Marine Manufacturers Association (NMMA) and City of Miami of temporary floating docks in Biscayne Bay at the Miami Marine Stadium. The dismissal was based upon a determination that the Village does not have third-party standing to challenge the permit under Florida's Administrative Procedure Act. We affirm the final order of dismissal.

The Village of Key Biscayne is an island community with approximately 12,000 residents, occupying the central portion of Key Biscayne, a barrier island south of Virginia Key. Access from the mainland to Key Biscayne is limited to a single roadway, the Rickenbacker Causeway, which passes through Virginia Key en route to the island community. Virginia Key is the smaller of the two islands and consists primarily of government-owned land designated for parks, and the Maritime and Science Technology Senior High School ("MAST"). The Miami Marine Stadium is located on Virginia Key along the Rickenbacker Causeway upland of a lagoon known as the Miami Marine Basin.[2] The basin empties into

---

[1] See § 373.414, Fla. Stat. (2015).

Biscayne Bay and lies within the Biscayne Bay Aquatic Preserve, established by act of the legislature in 1974 to protect environmentally significant waters. § 258.165. Fla. Stat. (1975)[3]; Ch. 74-171, Laws of Fla. Although the Village of Key Biscayne owns no property on Virginia Key or the submerged lands surrounding Virginia Key, the legislative enactment creating the Preserve defined the eastern borders of the Preserve by reference, in part, to portions of the Village borders. The only palpable relationship the Village has to Virginia Key is through an interlocal agreement with the Miami-Dade School Board executed in 2012, by which the Village committed $23 million in financing to the expansion of MAST in return for exclusive use of the school's fields for Village youth sports and recreational programs after school hours and on weekends, and an allocation of not less than 1,100 student seats for children of Village residents. Neither MAST nor any student of the school joined in the petition.

The purpose of Chapter 373 of the Florida Statutes, titled "Florida Water Resources Act of 1972," is the protection and conservation of the water resources of the state. Peace River/Manasota Reg'l Water Supply Auth. v. IMC Phosphates

---

[2] The stadium was constructed in 1963 with the grandstand facing the lagoon for the purpose of hosting watersports, including power boat racing. In 1992, it was condemned as unsafe as a result of severe hurricane damage. According to the allegations of the petition, it has not been renovated.
[3] In 1985, the section was renumbered to 258.397.

<u>Co.</u>, 18 So. 3d 1079, 1084 (Fla. 2d DCA 2009). Section 373.414(1) of the Act

requires that an applicant seeking a permit or water resource certification:

> [D]emonstrat[e] that an activity regulated under this part **will not be harmful to the water resources or will not be inconsistent with the overall objectives of the district**, the governing board or **the department shall require the applicant to provide reasonable assurance that state water quality standards** applicable to waters as defined in s. 403.031(13) **will not be violated and reasonable assurance that such activity in, on, or over surface waters or wetlands**, as delineated in s. 373.421(1), **is not contrary to the public interest**.

(Emphasis added.)

The environmental resource permit issued in this case approves the

installation by NMMA of approximately 830 temporary water slips in the Miami

Stadium Basin yearly (in February) for up to twelve weeks (setup to breakdown) to

facilitate a weekend-long boat show. Although the activities proposed by the

NMMA indisputably fall within the ambit of Chapter 373, we agree with the DEP

that the Village of Key Biscayne lacks standing to challenge the issuance of the

permit. As explained by the Department:

> [T]he Petition must be dismissed for lack of standing because the Petitioner's allegations cannot comply with the substantial interest standing test that governs this type of environmental permitting proceeding.
>
> *Lack of standing*
>
> The Petition's allegations do not specifically explain how the Petitioner has demonstrated standing to challenge the Department's proposed environmental permitting decision. In order to demonstrate such standing, the Petition must allege that the Petitioner's substantial environmental interests that are within the zone of interest of the

4

proposed environmental permit, are affected by the Department's proposed decision.

A municipality like the Petitioner must demonstrate substantial interests that exceed the general interests of its citizens and that are within the zone of interest of the proposed environmental permit. See Hamilton Cty. v. TSI Southeast, Inc., 12 F.A.LR. at 3781, 1990 WL 282353, at *7 (Fla. Dept. Envtl. Reg., Sep. 7, 1990), aff'd. Hamilton Cty. v. Dep't of Envtl. Reg., 587 So. 2d 1378 (Fla. 1st DCA 1991). The Petitioner must demonstrate that (1) it will suffer injury-in-fact which is of sufficient immediacy to entitle it to a hearing under Sections 120.569 and 120.57, Florida Statutes, and Rule 28-106.201, Florida Administrative Code, and (2) the injury is of a type or nature which the administrative proceeding is designed to protect (zone of interest). See Agrico Chemical Co. v. Dep't of Envtl. Reg., 406 So. 2d 478, 482 (Fla. 2d DCA 1981), rev. den., 415 So. 2d 1359 (Fla. 1982).

The Petition's allegations do not demonstrate actual injury-in-fact or a real and immediate threat of direct injury to interests that are protected in this type of environmental permitting proceeding. The Petitioner's allegations regarding economic investments and contractual obligations [referring here to MAST] are not the types of interests protected by this type of proceeding. See, e.g., Mid-Chattahoochee River Users v. Fla. Dep't of Envtl. Prot., 948 So. 2d 794, 797 (Fla. 1st DCA 2006) (reflecting that allegations of economic injury do not satisfy the second prong of the Agrico standing test); Village Park v. Dep't of Business Reg., 506 So. 2d 426, 433 (Fla. 1st DCA 1987) (reflecting that the petition's allegations failed to demonstrate a real and immediate threat of direct injury).

Further, the Petition's allegations regarding local comprehensive plans and zoning regulations are also not within the zone of interest of this type of environmental permitting proceeding. See, e.g., Council of Lower Keys v. Charley Toppino & Sons, Inc., 429 So. 2d 67, 68 (Fla. 3d DCA 1983); Taylor v. Cedar Key Special Water and Sewerage District, 590 So. 2d 481 (Fla. 1st DCA 1991) (reflecting that the department is not authorized to deny environmental permits based on alleged noncompliance with local land use restrictions and comprehensive plans). Thus, the Petition's reference to a comprehensive development master plan case in which the Petitioner's standing was previously recognized,[1] does not satisfy the standing test for challenging an environmental permit. Id.

5

Finally, the Petition's allegations regarding lack of review by the Board of Trustees of the Internal Improvement Trust Fund (Board) under its proprietary rules is misplaced. The Notice of Intent and draft permit indicate that the property in question is not sovereign submerged land owned by the State of Florida. These allegations are not within the zone of interest of this environmental permitting proceeding. See Agrico Chemical Co. v. Dep't of Envtl. Reg., 406 So. 2d 478, 482 (Fla. 2d DCA 1981), rev. den., 415 So. 2d 1359 (Fla. 1982); Stephen Herbits, et al. v. Bd. Of Trustees of the Internal Improvement Trust Fund, OGC Case No. 14-0306 (Fla. Dept. Envtl. Prot. Feb. 6, 2015).[2]

In view of the above, it conclusively appears from the face of the Petition that the defect of lack of standing cannot be cured, and the Petition must be dismissed as required by Section 120.569(2)(c), Florida Statutes.

_____

 Vill. of Key Biscayne v. Dade Cty., 627 So. 2d 1180 (Fla. 3d DCA 1993).
[2] Reported at www.doah.state.fl.us, Agency Indexed Orders.

We find no error in the analysis of the department, and, in the interest of expediency, adopt it as our own.[4]

Although not dispositive of the merits of in this case, we pause to address the Village's argument that the DEP's General Counsel violated the Village's due process rights when he, and not an Administrative Law Judge, determined the Village's standing. Our research reveals that state agencies routinely dismiss petitions for administrative hearing for failure to plead a sufficient basis for the petitioner's standing to bring the petition. E.g., S. Broward Hosp. Dist. v. State, Agency for Health Care Admin., 141 So. 3d 678, 680-81 (Fla. 1st DCA 2014)

_____

[4] We and DEP both denied the Village's motion to stay the issuance of the permit prior to the February 2016 Boat Show. The next Boat Show is scheduled for February 2017.

(agency dismissed request for administrative hearing for lack of standing); Washington County v. Nw. Fla. Water Mgmt. Dist., 85 So. 3d 1127, 1130-31 (Fla. 1st DCA 2012); Gadsden Jai Alai, Inc. v. State, Dep't of Bus. & Prof. Reg., Div. of Pari-Mutuel Wagering, 26 So. 3d 68, 70 (Fla. 1st DCA 2010); Univ. of S. Fla. Coll. of Nursing v. State, Dep't of Health, 812 So. 2d 572, 574 (Fla. 2d DCA 2002). Indeed, case law confirms, and the Village concedes, that standing under the Administrative Procedure Act includes instances where even DEP has dismissed petitions for administrative hearings on the basis that the petitioner lacked standing to challenge its final agency action. See Mid-Chattahoochee River Users v. Fla. Dep't of Envtl. Prot., 948 So. 2d 794, 799 (Fla. 1st DCA 2006); Dillard & Assocs. Consulting Eng'rs v. Fla. Dep't of Envtl. Prot., 893 So. 2d 702, 703-705 (Fla. 1st DCA 2005).

The Village nevertheless argues that "the DEP Office of General Counsel was directly involved in the decision-making process that led to the approval of the Permit Application at issue in this case and predetermined some of the facts and legal issues presented in the Village's Petition." Further pointing out that the DEP Office of General Counsel reviewed the Village's thirty-page petition and issued its final order of denial on standing grounds just two days after it was filed, the Village argues, "This process is analogous to a plaintiff filing a lawsuit, then allowing the defendant to act as judge and jury to dismiss the plaintiff's claims,

7

without an opportunity for the plaintiff to present its case to an impartial third-party."

We express some sympathy for the argument. It is a fundamental precept in our jurisprudence that due process must be afforded all litigants in judicial and quasi-judicial proceedings. Dept. of Law Enforcement v. Real Property, 588 So. 2d 957, 960 (Fla. 1991). However, our Supreme Court has held that "the administrative context does not and need not match the judicial model." Ridgewood Props., Inc. v. Dep't of Cmty. Affairs, 562 So. 2d 322, 323 (Fla. 1990). Perhaps, unfortunately, it is a common practice for agency staff to "serve investigative, prosecutorial, and adjudicative roles in the same dispute." Charlotte County v. IMC-Phosphates Co., 824 So. 2d 298, 300 (Fla. 1st DCA 2001). However, the Florida Administrative Procedure Act sanctions this seemingly unnatural deference to administrative authority. The Act commands in section 120.569(d) that, "[t]he agency **may** refer a petition to the division for the assignment of an administrative law judge **only if** the petition is in substantial compliance with the requirements of paragraph (c)." (emphasis added). Paragraph (c) provides:

> Upon the receipt of a petition or request for hearing, the agency shall carefully review the petition to determine if it contains all of the required information. **A petition shall be dismissed if it is not in substantial compliance with these requirements** or it has been untimely filed. . . .

8

§ 120.569(c) (emphasis added).  Pursuant to Rule 62-113.200(3)(b) of the Florida Administrative Code, the Secretary of DEP has delegated the authority to make that determination to his General Counsel.[5]

We admit there does appear to be an inherent conflict of interest in a system in which the agency which has determined to issue a water quality permit is also the adjudicator of whether a petitioner should be allowed to present his grievance to a neutral official.  However, the Village did not preserve this issue either by questioning DEP's authority to address or determine standing at the agency level or requesting the DEP Office of General Counsel to recuse itself from the matter.  In fact, following issuance of the Final Order, the Village sent correspondence to DEP's General Counsel, announcing its intention to appeal, but offering to forego an appeal "should you agree to reconsider your decision."

We find no fundamental error in the conduct of the agency in this case.  However, as we have noted in the past, "the system," as it presently exists, "is

_____

[5] Rule 62-113.200(3)(b) states:

The Secretary, as head of the Department, has delegated authority as follows:
….
 (3) To the General Counsel,
….
(b) to make the determination within ten days of receipt of a petition for an administrative determination of whether or not to refer the petition to DOAH for the assignment of the proceeding to a Hearing Officer, or whether or not to commence informal proceedings pursuant to Section 120.57(2), F.S. . . .

9

hazardous to those who want to request an administrative hearing." See Brookwood Extended Care Ctr. of Homestead, LLP v. Agency for Healthcare Admin., 870 So. 2d 834, 842 (Fla. 3d DCA 2003) (Cope, J., specially concurring). Statutory modification may be warranted here to circumscribe the scope of power of the unelected, but no doubt well-meaning, individuals who populate our ever expanding administrative state. Id.

For the foregoing reasons, we affirm the DEP's final order dismissing, with prejudice, the Village's Petition for Administrative Hearing for lack of standing.

Affirmed.