DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BLUEFIELD RANCH MITIGATION BANK TRUST,**
Appellant,

v.

**SOUTH FLORIDA WATER MANAGEMENT DISTRICT** and **FLORIDA DEPTARTMENT OF TRANSPORTATION,**
Appellees.

No. 4D16-3023

[October 31, 2018]

Appeal from the South Florida Water Management District; L.T. Case No. 2016-050-FOF-ERP.

Thomas E. Warner, Dean A. Morande, Matthew Z. Leopold, and Michael D. Sloan of Carlton Fields Jorden Burt, P.A., West Palm Beach, for appellant.

Marc Peoples, Assistant General Counsel of Department of Transportation, Tallahassee, for appellee Florida Department of Transportation.

Susan Roeder Martin, West Palm Beach, for appellee South Florida Water Management District.

**ON MOTION FOR REHEARING AND
MOTION FOR CLARIFICATION OR CORRECTION**

FORST, J.

We deny the Florida Department of Transportation's motion for rehearing, but grant the South Florida Water Management District's motion for clarification or correction. We thus withdraw our previously issued opinion and substitute the following.

Appellant Bluefield Ranch Mitigation Bank Trust ("Bluefield") sought to challenge the South Florida Water Management District's ("District") issuance of a permit to the Florida Department of Transportation ("FDOT") for a road-widening project. The District dismissed Bluefield's petition for

a formal administrative proceeding ("petition") with prejudice, determining Bluefield lacked standing to challenge the permit. The District's decision was based on its determination that the only injury specifically alleged by Bluefield was economic. We disagree, and conclude that Bluefield has demonstrated standing beyond mere economic injury. We thus reverse the District's dismissal order and remand for a formal administrative proceeding on Bluefield's petition.

## Background

The District is a government entity created under Chapter 373, Florida Statutes, which has the responsibility to conserve, protect, manage, and control water resources within its geographic boundaries. *See* §§ 373.016, .036, Fla. Stat. (2016). Bluefield is a privately-owned mitigation bank, established pursuant to section 373.4136, Florida Statutes, for the purpose of operating and managing the Bluefield Ranch Mitigation Bank. Mitigation banking is the practice in which a mitigation bank sells "credits" in exchange for conducting environmental enhancement and preservation to offset unavoidable adverse impacts to the wetlands and to other property within its mitigation service area caused by development or construction projects requiring a permit from the District. *See* §§ 373.403(19), .4136(1), Fla. Stat.

At the time of receiving a mitigation bank permit, a mitigation bank is granted a certain number of mitigation credits. § 373.4136(4), Fla. Stat. Each credit is a unit of measure representing the increase in ecological value to offset adverse impacts within the bank's service area. *See* § 373.403(20), (21), Fla. Stat. A mitigation bank sells its credits to the permittee of the proposed project, who applies them to meet its mitigation requirements. Bluefield is a permitted mitigation bank, with property situated within the service area and regional watershed of the project at issue. Mitigation service areas can overlap, and mitigation service areas for two or more mitigation banks may be approved for a regional watershed. § 373.4136(6), Fla. Stat.

FDOT applied for a permit, which the District issued, for its project to widen a section of State Road 710/Beeline Highway. Per the permit, FDOT was required to purchase mitigation credits as a means of offsetting the environmental impact to the wetlands from the road-widening project. FDOT purchased some of the required mitigation credits from Bluefield, but most of the mitigation was to be provided by Dupuis Reserve ("Dupuis").

2

In its petition challenging the use of mitigation credits from Dupuis, Bluefield argued that Dupuis did not meet certain statutory criteria to be considered for mitigation on the project. Therefore, FDOT was required to consider Bluefield for the mitigation credits that would otherwise be provided by Dupuis. The petition asserted that Bluefield has standing to challenge FDOT's permit because, as a mitigation bank, it has a substantial interest in the enforcement of statutory compliance for mitigation within its service area and within the same regional watershed as the project. That "substantial interest," the petition contends, is to prevent environmental harm caused by unlawful mitigation. Bluefield further argued that it had standing because, as a landowner in the affected area, it has a substantial interest in the protection of the environment and the continued restoration, enhancement, and preservation of wetlands within its regional watershed and service area.[1]

The District dismissed Bluefield's petition with prejudice, concluding that Bluefield failed to (and could not) allege facts demonstrating it had substantial interests (other than purely economic interests) that would be affected by the issuance of the permit. On appeal, Bluefield requests a reversal of the dismissal and an opportunity to present its challenge at an administrative hearing.

## Analysis

In reviewing agency determinations on issues which do not require special agency expertise, such as standing, we accept the allegations in the petition as true, and are not required to give any deference to the agency's legal conclusions. *See S. Broward Hosp. Dist. v. State, Agency For Health Care Admin.*, 141 So. 3d 678, 680-81 (Fla. 1st DCA 2014). As such, we review whether a party has standing de novo. *See Mid-Chattahoochee River Users v. Fla. Dep't of Envtl. Prot.*, 948 So. 2d 794, 796 (Fla. 1st DCA 2006); *see also Save Our Creeks v. State of Fla. Fish & Wildlife Conserv. Com'n*, 112 So. 3d 128, 129-30 (Fla. 1st DCA 2013) (an agency's dismissal of a petition for an administrative hearing is reviewed de novo).

### A. The *Agrico* test for standing

Bluefield asserts that it has standing under the Florida Administrative Procedure Act ("FAPA"), which defines "party," in pertinent part, as:

---

[1] A third proffered rationale for standing, that Bluefield had "preferred status," is rejected without further discussion or analysis.

> Any other person who, as a matter of constitutional right, provision of statute, or provision of agency regulation, is entitled to participate in whole or in part in the proceeding, or whose substantial interests will be affected by proposed agency action, and who makes an appearance as a party.

§ 120.52(13)(b), Fla. Stat. (2016).

A two-part test to determine standing to participate in an administrative proceeding under this subsection of FAPA was established in *Agrico Chemical Co. v. Department of Environmental Regulation*, 406 So. 2d 478 (Fla. 2d DCA 1981). The *Agrico* test looks to whether there is an injury in fact with sufficient immediacy, and a substantial injury of the type which the proceeding is designed to protect. *Id.* at 482. The first element pertains to the degree of injury and the second element deals with the nature of the injury. *Id.*

It is well established that mere economic interests and the general interests of citizens are insufficient to establish standing. *See Mid-Chattahoochee River Users*, 948 So. 2d at 796-99; *City of Sunrise v. S. Fla. Water Mgmt. Dist.*, 615 So. 2d 746, 748 (Fla. 4th DCA 1993). The reason, in part, is because we seek to "limit unwarranted use of judicial resources in challenges involving discretional decisions of legislative bodies." *Rosenzweig v. Dep't of Transp.*, 979 So. 2d 1050, 1053 (Fla. 1st DCA 2008). However, we are also cognizant that "one of the major legislative purposes of the Administrative Procedure Act was the expansion of public access to the activities of governmental agencies." *Id.* (citing *Fla. Home Builders Ass'n v. Dep't of Labor*, 412 So. 2d 351, 352-53 (Fla. 1982)).

*Agrico*'s intent was not to preclude participation by parties who stand to be affected by the actual and foreseeable results of agency action. *See Peace River/Manasota Reg'l Water Supply Auth. v. IMC Phosphates Co.*, 18 So. 3d 1079, 1082-83 (Fla. 2d DCA 2009) ("[S]tanding is a legal concept that requires a would-be litigant to demonstrate that he or she reasonably expects to be affected by the outcome of the proceedings, either directly or indirectly." (quoting *Hayes v. Guardianship of Thompson*, 952 So. 2d 498, 505 (Fla. 2006))). Instead, *Agrico*'s intent was to "preclude parties from intervening in a proceeding where those parties' substantial interests are totally unrelated to the issues that are to be resolved in the administrative proceedings." *Mid-Chattahoochee River Users*, 948 So. 2d at 797 (citing *Gregory v. Indian River Cty.*, 610 So. 2d 547, 554 (Fla. 1st DCA 1992)). Examples of parties that have been "preclude[d] from intervening in a proceeding" per this *Agrico* "substantial interest" test are *Mid-Chattahoochee River Users*, 948 So. 2d at 797, and *City of Sunrise*, 615 So.

4

2d at 748—two cases where the petitioners lacked standing for alleging mere economic injury, and not the kind of injury for which the proceeding was designed to protect, namely, the protection and conservation of water and related land sources.

## B. Bluefield's alleged "injury"

Addressing transportation projects with unavoidable impact to wetland areas, the Florida Legislature expressed its intent that "mitigation to offset the adverse effects of these transportation projects be funded by [FDOT] and be carried out by the use of mitigation banks and any other mitigation options that satisfy state and federal requirements in a manner that promotes efficiency, timeliness in project delivery, and cost-effectiveness." § 373.4137(1), Fla. Stat. To effectuate this intent, FDOT "*must consider* using credits from a permitted mitigation bank" and "*must consider* the availability of suitable and sufficient mitigation bank credits within the transportation project's area." § 373.4137(2)(c), Fla. Stat. (emphases added). Once it has met its "must consider" obligation, FDOT can "purchase credits for current and future use directly from a mitigation bank, purchase mitigation services through the water management districts or the Department of Environmental Protection, conduct its own mitigation, or use other mitigation options that meet state and federal requirements." § 373.4137(3)(a), Fla. Stat.

To qualify as a permitted mitigation bank, thereby qualifying for "must consider" status, a mitigation bank is obligated to provide reasonable assurance that it will meet applicable statutory and regulatory standards, including its ability to manage and improve the mitigation service area, and maintain the financial ability to do so, into perpetuity. *See* § 373.4136(1), Fla. Stat. As such, a mitigation bank provides assurance that there is "a substantial likelihood that the project will be successfully implemented." *Metro. Dade Cty. v. Coscan Fla., Inc.*, 609 So. 2d 644, 648 (Fla. 3d DCA 1992).

Here, Bluefield's petition alleges that using Dupuis for mitigation violated the section 373.4135(1)(b) prohibition of the use of property previously purchased for conservation. Bluefield maintains that Dupuis was previously purchased by the District with funding reserved for conservation projects and was already being utilized for conservation purposes and thus disqualified for "must consider" status.

The petition further contends that Dupuis has not provided the appropriate reasonable assurances for the mitigation of this project that are required by the statutory provisions governing this process.

5

Particularly, Bluefield contends Dupuis failed to meet the public interest criteria set forth in section 373.414(a), such as whether the use of the Dupuis acreage would "adversely affect the public health, safety, or welfare or the property of others," including Bluefield's own regional watershed and service area.

Whether Dupuis is qualified to be considered for the project's mitigation is a disputed question of fact on the merits of Bluefield's petition. We take Bluefield's petition as true for the purposes of reviewing the District's dismissal. Whether Bluefield will be successful on the merits is irrelevant to our inquiry. *See Palm Beach Cty. Envtl. Coal. v. Fla. Dep't. of Envtl. Prot.*, 14 So. 3d 1076, 1078 (Fla. 4th DCA 2009).

### C. Bluefield's "substantial interest"

Assuming Dupuis is not qualified to provide mitigation on the project, the question becomes whether Bluefield has a substantial interest in challenging the permit issued by the District to FDOT, in order to contest the latter's choice of Dupuis to be the recipient of the majority of the mitigation.

Mere economic injury is not enough, but when a party alleges "economic injury, in combination with other factors, [it] may provide a basis for standing in an administrative proceeding." *Fla. Police Benevolent Ass'n, Inc. v. Fla. Dep't. of State, Div. of Licensing*, 450 So. 2d 283, 284 (Fla. 1st DCA 1984) (citing *Fla. Med. Ass'n v. Dep't of Prof'l Reg.*, 426 So. 2d 1112, 1115 (Fla. 1st DCA 1983)); *see also Ybor III, Ltd. v. Fla. Hous. Fin. Corp.*, 843 So. 2d 344, 346 (Fla. 1st DCA 2003).

In *Ybor*, a housing developer (Ybor) and its competitor applied for limited funding to provide affordable housing in Florida. *Id.* at 345. Ybor's application was denied and its competitor's was accepted. *Id.* Ybor's petition challenged its competitor's accepted application, and asserted that its competitor's application was scored in a manner inconsistent with the agency's mandate. *Id.* Ybor argued that, if its competitor's application had been properly scored, then Ybor, rather than the competitor, would have been entitled to the funding. *Id.*

Taking the petition as true, the First District held that Ybor had a substantial interest in ensuring that the agency was "provid[ing] and promot[ing] the public welfare by administering the governmental function of financing . . . housing . . . in Florida." *Id.* (quoting §§ 420.504(1), .502(7), Fla. Stat.). "Common sense and logic dictate that if such a program of economic incentives . . . is to succeed, the process of determining who is

qualified . . . must be administered fairly, honestly, and consistently according to the rules that [the agency] is charged with implementing." *Id.* at 346. If Ybor lacked standing, "[a]n agency could act fraudulently, illegally, arbitrarily, dishonestly, or inconsistently with impunity." *Id.*

Following the logic of *Ybor*, an economic interest in the outcome does not disqualify Bluefield from standing. Bluefield, like Ybor, is a for-profit company. The purpose of the statute in *Ybor* was to provide affordable housing through financing affordable housing to low income applicants, provided by private companies that were the recipients of government grants. The purpose of the statute at issue here is the protection of water resources and the ecosystem through the use of mitigation, funded by the sale of mitigation credits. Bluefield's interests are greater than purely economic: mitigation banks were created and are regulated for the very purpose of mitigating the adverse impacts to wetlands caused by construction and development. Bluefield argues that, by choosing an unlawful mitigation option, FDOT and the District are subverting the statutory scheme. Bluefield is a mitigation bank located within the same regional watershed and service area as the project, creating a substantial interest in the enforcement of statutory compliance for mitigation for this project.

Another case applicable to the instant situation is *Town of Palm Beach v. State Department of Natural Resources*, 577 So. 2d 1383 (Fla. 4th DCA 1991). There, we reversed an agency determination that certain property owners did not have a substantial interest in an agency's eventual determination that certain landscaping activities on the beach were outside of its jurisdiction, thereby not requiring a permit. *Id.* at 1384-85. The petitioning parties included the Town of Palm Beach, which owned Phipps Ocean Park within 1000 feet of the condominium and alleged that the Park would suffer damage if the landscaping activity continued, and Dave Darwin, who owned a property within 1000 feet of the condominium and alleged that his property would be damaged by the continued disruption of the dune system. *Id.* at 1385. We found that both of these petitioners had a substantial interest in challenging the agency's determination because

> the statute and administrative proceedings are designed to protect the entire beach/dune system of the state of Florida, and [the petitioners] allege that [the landscaping activities] will harm the dune system in the area of [the condominium's] property. Therefore [the petitioners] have made sufficient allegations to meet the test of standing under *Agrico* and are

entitled to a hearing to present evidence to support their allegations of standing.

*Id.* at 1388.

As in *Town of Palm Beach*, the distance from the petitioning party to the point of environmental damage (here, the FDOT road-widening project) was sufficiently close that the harm alleged can be reasonably expected. That is to say, Bluefield, like the petitioners in *Town of Palm Beach*, are within the "zone of interest" of the proposed environmental permit. *See Vill. of Key Biscayne v. Dep't of Envtl. Prot.*, 206 So. 3d 788, 790 (Fla. 3d DCA 2016) (citing *Hamilton Cty. Bd. of Cty. Comm'rs v. State Dep't of Envtl. Regulation*, 587 So. 2d 1378 (Fla. 1st DCA 1991)). An argument of potential environmental injury to Bluefield's conservation acreage is reasonable based on Bluefield's location within the same regional watershed and mitigation service area. That is not to say that mitigation banks within a service area will have standing to challenge a permit on that fact alone, but Bluefield is also located in close proximity to the project within the same regional watershed, and it could reasonably be affected by the issuance of a permit to allow Dupuis, without the statutory compliance required, to provide mitigation in the same service area and regional watershed.

In *Rosenzweig*, the First District used the *Agrico* test to determine whether a bicyclist organization had standing to challenge FDOT's interpretation of a statute specifically relating to bicycle lanes. *Rosenzweig*, 979 So. 2d at 1053. The First District noted that the first prong of the *Agrico* test was satisfied because the organization's members "will not have a delineated path on which to ride their bicycles if bicycle lanes are not constructed pursuant to [FDOT's] standards." *Id.* at 1054. The second prong was satisfied because: "Reason dictates that a bicyclist organization . . . can demonstrate that a substantial number of its members will be affected by [FDOT's] decisions relating to the construction of bicycle paths." *Id.* In finding the organization had standing, the First District stated that "it is clear that if *anyone* has the ability to challenge [FDOT's] interpretation of section 335.065, which specifically relates to bicycle lanes, it would be those seriously involved in bicycling." *Id.*

Similarly here, should mitigation by Dupuis be unlawful, it subjects the shared service area and regional watershed to harm, including degradation of the mitigation bank that Bluefield is entrusted to protect and manage into perpetuity. Harm to the wetlands is the injury in fact, and Bluefield has a substantial interest in ensuring compliance with the statutory scheme. Here too, it can be reasonably argued that if *anyone* has the

ability to challenge FDOT's compliance with the "must consider" provision, it would be those permitted mitigation banks like Bluefield, which seek to challenge a permit that purportedly allows unlawful mitigation within its service area and regional watershed.

## Conclusion

As set forth above, we reverse the District's dismissal, and find that the four corners of the petition adequately alleged standing because it was reasonably foreseeable that Bluefield's conservation acreage could be adversely affected by the degradation of the regional watershed and ecosystem caused by the selection of a purportedly unlawful mitigation option. We thus remand for a formal administrative proceeding on Bluefield's petition.

*Reversed and remanded.*

TAYLOR and KLINGENSMITH, JJ., concur.